439 So.2d 348 (1983)
COMMISSIONER OF AGRICULTURE, State of Louisiana
v.
PLAQUEMINES PARISH COMMISSION COUNCIL.
No. 82-CA-2657.
Supreme Court of Louisiana.
March 18, 1983.
Dissenting Opinion May 10, 1983.
Robert S. Leake, Riddick & Leake, Baton Rouge, for plaintiff-appellant.
Louis B. Porterie, Gretna, for defendant-appellee.
C. Ellis Henican, Henican, James & Cleveland, New Orleans, for intervenors-appellees.
WATSON, Justice.
The Commissioner of Agriculture of the State of Louisiana brought two suits for declaratory judgment against the Plaquemines Parish Commission Council, the governing authority of that parish, contending that Plaquemines Parish Ordinances Nos. 212 and 372 are invalid because they were not submitted to the advisory commission on pesticides for a public hearing as required by LSA-R.S. 3:1623(D). The two suits were consolidated for trial.
Intervenors in the suits are Riverside Citrus Farms, Inc. and various citizens of Plaquemines Parish, who are involved in the operation of broadleaf vegetable farms *349 and/or fruit tree orchards.[1] The intervenors oppose plaintiff's suit.
Ordinance number 212, adopted March 14, 1979, has the following title:
"An ordinance to regulate the aerial application of seeds, fertilizers, pesticides, and other materials in the Parish of Plaquemines; to require all persons, firms and corporations engaged in such aerial application to secure a permit from the Plaquemines Parish Commission Council prior to conducting such operations; and to provide procedures for conducting the operations, and penalties for the violation thereof and to provide otherwise both generally and specifically therewith."[2]
Ordinance number 372, adopted March 31, 1982, has the following title:
"An Ordinance to prohibit the application of certain herbicides in the Parish of Plaquemines; to provide for penalties for the application or use in violation thereof; and to provide otherwise, both generally and specifically, with respect thereto."[3]
LSA-R.S. 3:1623(D)[4] provides that:
"(D) The commissioner shall have the authority to declare a pesticide a pesticide with restricted uses if he determines that the pesticide when applied in accordance with its directions for use, warnings, and cautions will present a hazard under specific conditions. A political subdivision of the state in order to enact more restrictive regulations than contained in this subpart may do so after public hearing duly held before the advisory commission and with the approval of the commissioner."
*350 The trial court held the above section of the statute unconstitutional as a violation of the separation of powers in Art. 2, § 2, Louisiana Constitution of 1974, as follows:
"Except as otherwise provided by this constitution, no one of these branches, [the legislative, executive and judicial] nor any person holding office in one of them, shall exercise power belonging to either of the others."
The Commissioner of Agriculture has appealed from the declaration of unconstitutionality.
The federal scheme allows state pesticide regulation which is more but not less restrictive than the federal standards. See 7 U.S.C.A., § 136v.(a).[5] Similarly, the state allows more restrictive local pesticide regulation under LSA-R.S. 3:1623(D), supra. The state has not preempted the field of regulation. Compare Rollins Environmental Serv. v. Iberville Parish, 371 So.2d 1127 (La., 1979). As pointed out in the concurring opinion of Justice Tate in Rollins, supra, a home rule local governing authority such as the Parish of Plaquemines can exercise all powers not denied by statute or the constitution.
The commissioner of agriculture is part of the executive branch of government. LSA-Const. Art. IV, § 1(A).[6] The legislature may delegate certain powers to such administrative department heads. However, the legislature cannot lodge "unfettered discretion" with an administrative officer. Schwegmann Brothers Giant Super Mkts. v. McCrory, 112 So.2d 606 at 614 (La., 1959). In doing so, the legislature unconstitutionally surrenders the legislative power itself. State v. Rodriquez, 379 So.2d 1084 (La., 1980). "... [W]here a statute vests arbitrary discretion in a board or an official without prescribing standards of guidance there is an unconstitutional delegation of legislative authority to the executive branch of the government." Rodriquez, supra, 379 So.2d 1084 at 1086. The commissioner of agriculture can administer laws only if there are adequate standards for execution of the legislative policy.
Here, the statute has no standards to guide the advisory commission on pesticides or the commissioner in determining whether to approve or disapprove more restrictive regulations by local political subdivisions. Absent any standards, the requirement is void as an unconstitutional delegation of legislative power to the executive branch of government.
For the foregoing reasons, the judgment of the trial court herein is affirmed.
AFFIRMED.
CALOGERO and DENNIS, JJ., dissent and assign reasons.

APPENDIX
The text of Ordinance 212 is as follows:
"BE IT ORDAINED BY THE PLAQUEMINES PARISH COMMISSION COUNCIL THAT:

SECTION I
"A permit from the Plaquemines Parish Commission Council, bearing the signature of its President or Secretary, shall be required for the aerial application of seeds, fertilizers, pesticides and other similar materials within the Parish of Plaquemines. The permit shall be obtained by the aerial applicator prior to any such operations.

SECTION II
"Application for a permit for such aerial application shall be filed with the Council *351 Secretary on forms provided by the Parish Council. The application shall be accompanied by copies of a vicinity map showing the exact area or areas in which the aerial application is to be conducted. Where the right of way aerial applications apply, a system or line map(s) outlining the right of way to be sprayed shall be submitted. Such area shall be shown, where possible, by reference to established landmarks. All permits shall be conditioned upon the aerial applicator obtaining, in advance of commencing work, the necessary permits from the Louisiana Department of Agriculture, other applicable state agencies, and all appropriate federal agencies.

SECTION III
"A permit shall be required for each application or approved series of applications. After the expiration of a permit, aerial application may continue or be resumed under a new permit issued on application made as provided in Section II.

SECTION IV
"No single permit will be issued for an area greater than 2,000 acres and no aerial applicator shall work outside the area or areas described in its permit or permits.

SECTION V
"Each aerial applicator working under a permit issued pursuant to this Ordinance shall always be accompanied by a parish agent. When an aerial applicator employs more than one component or unit, and the units are at such a distance apart that it is impossible for the parish agent to observe the work of each unit or component, an agent shall be assigned to each component or unit of the crew. The parish agent will be present continuously during the operation of the component or unit to which he is assigned; provided, however, upon good cause shown, a special permit may be granted by the President of the Plaquemines Parish Commission Council which may waive the necessity of the presence of the agent during the operation.

SECTION VI
"All aerial applicators who use any pesticide used in aerial operations shall use only EPA or State of Louisiana registered chemicals from clearly labeled containers. Such containers shall be made available for inspection upon request by the assigned parish agent.

SECTION VII
"All aerial applicators of pesticides shall have on hand and make available at the application site a copy of the manufacturers' label to the pesticide being used concerning mixing directions, handling safety, application precautions, first-aid treatment, and decontamination procedures in the event of spills or accidents in transit, storage, or use. The parish agent is authorized and empowered to take or cause to be taken a sample or samples of each pesticide, fertilizer, seed or other material which is to be applied and to cause a chemical analysis, as he may deem necessary, to be made of each product by an independent laboratory.

SECTION VIII
"A separate report shall be made by the parish agent for each day of aerial application operations of the applicator, component or unit to which he is assigned whether or not such operations actually occur. The daily reports shall be filed with the Council Secretary at the end of each permit period on forms provided by the Council. The information on the forms shall accurately reflect the following information:
1. The identity and full address of the aerial applicator;
2. For whom the application is being made;
3. The exact location or site of the application;
4. The date and time of day of the application;
5. The name of the seed, fertilizer, pesticide or other material applied;
*352 6. The weather conditions at the time and place of application including temperature, wind velocity and direction, humidity and other pertinent meteorological information;
The reports shall be signed by the parish agent. The aerial applicator shall furnish only such information to the parish agent as is required to fill out the daily reports. Should the Parish Council wish to secure any other information, it shall send the aerial applicator a written request.

SECTION IX
"The aerial applicator shall notify the Parish Council, through its Secretary, of the date of work initiation under the permit, of any work interruption, and of work cessation in any area. He shall keep the Council informed of the name and address of his representatives and employees and their locations and movements.

SECTION X
"When requested by the agent, because the operation will be conducted in the vicinity of crops, and subject to the approval of the Plaquemines Parish Commission Council, operations shall not be conducted between the hours of sunset and sunrise (nighttime), during periods of fog, or during any other period of restricted visibility due to smoke, smog, rain, or other such aerial visual obstruction.

SECTION XI
"A reasonable fee established by the Plaquemines Parish Commission Council shall be charged aerial applicators. This fee shall be used to pay the salary and expenses of parish agents assigned to aerial applicators working in the Parish of Plaquemines and to cover other attendant and overhead expenses. All payments shall be made by the aerial applicator directly to the Parish Council. No payment shall be made by the aerial applicator to the parish agent. The aerial applicator shall furnish the parish agent with transportation over the working area if requested by the agent.

SECTION XII
"The Plaquemines Parish Commission Council may order cessation of any particular aerial application if, in its opinion, such application will violate any of the provisions of this ordinance or any of the rules and regulations made pursuant hereto.

SECTION XIII
"The aerial applicator is required to notify the Secretary of the Parish Council immediately when the parish agent is not on the work site. Should it become necessary to relieve an agent at any time, the Parish shall arrange for the relief of the agent. No aerial application shall be made in the absence of a parish agent, except as otherwise provided in this ordinance.

SECTION XIV
"No parish agent shall have the authority to release any aerial applicator from any of the obligations imposed by this ordinance or the rules and regulations made pursuant hereto. Exceptions may be granted by the Council President only after written application stating the reasons for the exception. The release shall designate the particular area affected and the procedure to be followed in lieu of the established rules.

SECTION XV
"All aerial applicators shall use reasonable precautions in accordance with such approved and accepted methods to prevent destruction of, or injury to, life, property and crops, as well as oyster, shrimp and other aquatic life, wildlife and other natural resources. All aerial applications shall be conducted in accordance with the wind speed-minimum distance limitations promulgated by the Louisiana Pesticide Commission in its Rules and Regulations pursuant to the Louisiana Pesticide Law.

SECTION XVI
"Violation of any of the provisions of this ordinance or the refusal of any aerial applicator to comply fully herewith at the time *353 of application or any attempt to unduly influence any parish agent from abstaining from the enforcement of these regulations shall constitute peremptory cause for the revocation of any permit which may have been issued and may be sufficient grounds to bar such aerial applicator from future operations within the Parish of Plaquemines.

SECTION XVII
"Any person, firm or corporation found guilty of violating any of the requirements of this ordinance or any of the rules and regulations made pursuant hereto shall be deemed guilty of a misdemeanor and, upon conviction by a court of competent jurisdiction, shall be fined not more than five hundred ($500.00) dollars or be imprisoned not more than six (6) months, or both, at the discretion of the court. Each day's violation shall be considered a separate offense.

SECTION XVIII
"The Plaquemines Parish Commission Council is authorized to adopt and promulgate additional rules and regulations, not in conflict with any provisions herein, which it deems necessary for the proper enforcement hereof.

SECTION XIX
"Severability.
"If any provision or item of this Ordinance or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Ordinance which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Ordinance are hereby declared severable.

SECTION XX
"All Ordinances or parts of Ordinances in conflict with any of the provisions of this Ordinance are hereby repealed.
"WHEREUPON, in open session this Ordinance was read and considered section by section and as a whole.
"Commissioner Petrovich seconded the motion to adopt the ordinance.
"For the adotion (sic) of the Ordinance.
YEAS: Commissioners Chalin O. Perez, Luke A. Petrovich, Albert J. Beshel, Michael E. Kirby and Lennard H. Mackenroth
NAYS: None.
ABSENT: None.
PRESENT BUT NOT VOTING: None.
"And the Ordinance was declared adopted on this the 14th day of March, 1979." (Vol. I, Tr. 11-14)
The text of Ordinance 372 is as follows:
"WHEREAS, the Parish of Plaquemines has a thriving citrus and broadleaf vegetable industry which is vital to the local economy of the Parish; and,
"WHEREAS, the citrus and broadleaf vegetable industry of the Parish stretches the entire length and breadth of the Parish, on both banks of the Mississippi River from Venice to the upper reaches; and,
"WHEREAS, the growing season for the citrus and broadleaf vegetable industry of the Parish involves and requires the full twelve months of each calendar year; and,
"WHEREAS, the citrus industry of the Parish has been severely damaged by the recent freeze of 1982 and the citrus trees are presently in a precarious state of recovery under constant care and supervision; and,
"WHEREAS, the application of certain herbicides in the Parish during any citrus or broadleaf vegetable growing season, and particularly one in which cautious recovery from a serious freeze is being attempted, would be harmful and damaging to such citrus trees and broadleaf vegetable crops; and,
"WHEREAS, Opinion No. 771, 512, dated April 10, 1978, of the Louisiana Attorney General reflects that Police Juries and other similar political subdivisions of the State of Louisiana have the police power to regulate and/or restrict the use of particular herbicides within their territorial boundaries and that the same is not in conflict *354 with Federal or State legislation on the same issues; and,
"WHEREAS, Article II, Sec. 3, Sub-paragraph 15 & 20, the Charter for Local Self-Government for the Parish of Plaquemines, Louisiana, provides the authority for the Commission Council to provide the regulations as hereinafter set forth;
"NOW, THEREFORE:
"BE IT ORDAINED by the Plaquemines Parish Commission Council that:
"SECTION 1. As used herein, the following terms shall have the meanings ascribed to them unless otherwise hereinafter amended, modified or deleted:
a. `Pesticide' means any substance or mixture of substances defined as a pesticide by La.R.S. 3:1622(13).
b. `Insecticide' means any substance or mixture of substances intended for preventing or inhibiting the establishment, reproduction, development, or growth of; destroying; or repelling any member of the Class Insecta or other allied Classes in the Phylum Arthropoda that is defined as a pest under La.R.S. 3:1622(12).
c. `Herbicide' means any substance or mixture of substances intended for use in preventing or inhibiting the growth of, killing, or destroying plants and plant parts defined to be pests under La.R.S. 3:1622(12). The term `herbicide' shall for the purposes of these regulations include a substance or mixture of substances intended for use as a plant growth regulator, defoliant, or desiccant.
d. `Phenoxy herbicides' means any herbicide as defined above that contains a phenoxy derivative of lower aliphatic acide as an ingredient thereof.
e. `Label' means the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers.
"SECTION 2. Ester compound of `Phenoxy Herbicides' containing an aliphatic alcohol radical with less than six carbon atoms shall not be applied within the territorial confines of Plaquemines Parish.
"SECTION 3. The application of the following herbicides within the territorial confines of Plaquemines Parish is hereby specifically prohibited:

CHEMICAL NAME COMMON NAME TRADE NAME
4-amino-3,5, picloram Tordon, Tordon
6-tricholoropicolinic 22K Tordon
acid Beads, Tordon
 10K Pellets
3-chlorophenoxy-alpha-propionamide 3-CPA
4-chlorophenoxy 4-CPA
acetic acid
2,5-dichloro-3-nitrobenzoic dinoben
acid
2,4-dichlorophenoxy 2,4-D Formula 40,
acetic acid Aqua Kleen,
 Barweel,
 Phenox, 24-DA,
 Weedrap, 2,4-D
 nas 2,4-D
 dive, 2,4 DE,
 Hormotox, AM
 Sol, Weedan 64,
 Weed-no-more,
 Hormo salt,
 Weedanol, Weedone
 Dacamine,
 Weedey,
 Hedonol,
 Emulsamine
4-(2,4-dicholorophenoxy) 2,4-DB 2,4-DB, Butyrac
butyric 118, Butoxone,
acid Butyrac 200
2-(2,4-dicholorophenoxy) 2, (2,4-DP),
proprionic DPA, 2,4-DP
acid Proprihap,
 Dichloroprop
 Cornox RK,
 Hormatox, Polyt
 Polynone
2,3,6-trichlorophenylacetic fenac Fenac Plus
acid in plus
combination with the
dimethylamine salt of
2,4-dichlorophenoxy
acetic acid
2,methoxy-3, dicamba Banvel, Mediben
6-dichlorobenzoic
acid
2-methyl-4-chlorphenoxyacetic MCPA MCPA, MCP,
acid Agroxone, Methoxone,
 Mephanac,
 Weedar, Binetrol,
 Raphone,
 Weedone
4-(2 methyl-4-chlorophenoxy) MCPB, MPC, Butyric,
butyric acid Tropotox,
 MCPD,4-(MCPB),
 Can-Trol,
 Thitrol,
 Legumex
2-(2 methyl-4-chlorophenoxy) 2-MCPP
Propionic acid
sodium 2,4-dichlorophenoxyethyl Sesone, Ses, 2,
sulfate 4-des 2,4-DS
(2,4,5-trichlorophenoxy) 2,4,5-T Various
acetic
acid

*355
2-(2,4,5-trichlorophenoxy) Erbon, Baron,
ethyl, Novon, Novege
2,2-dechloropropionate
2-(2,4,5-trichlorophenoxy) silvex 2,4,5-TP, Propon,
propionic Kuron,
 Kurosal,
 Fenoprop, Weedone,
 2,4,5-TP,
 Silvi-Rhap
tris (2,4-dichlorophenoxyethyl 2,4-DEP, Falone
phosphite)
a mixture of tri-, tetra-, PEA, Zobar, and
and polychlorobenzoic Benzac 354,
acid Polychloro-Benzoic
 Acid

"SECTION 4. The provisions of Sections 2 and 3 shall not apply to the use of the above listed pesticides for the care of gardens in the immediate vicinity of a bonafide residential structure.
"SECTION 5. Violation of any of the provisions of this Ordinance or the refusal of any person, firm or corporation to comply fully herewith shall constitute peremptory cause for the revocation of any permit which may have been issued to such person, firm or corporation for the application of approved pesticides, insecticides or fertilizers and also may be sufficient grounds to bar such person, firm or corporation from future operations within the Parish of Plaquemines.
"SECTION 6. The Plaquemines Parish Commission Council is authorized to adopt the promulgate additional rules and regulations, not in conflict with any provisions herein, which it deems necessary for the proper enforcement hereof.
"SECTION 7. Any person, firm or corporation found guilty of violating any of the requirements of this Ordinance or any of the rules and regulations adopted pursuant hereto shall be deemed guilty of a misdemeanor and, upon conviction by a Court of competent jurisdiction, shall be fined not more than $500.00 or be imprisoned not more than six (6) months, or both, at the discretion of the Court. Each instance of application of any of the published substances listed in Section 3, hereinabove, shall be considered a separate offense.
"SECTION 8. If any provision or item of this Ordinance or the application thereof is held invalid, such invalidity shall not affect other provisions of this Ordinance which can be given effect without the invalid provisions, and to this end, the provisions of this Ordinance are hereby declared severable.
"SECTION 9. All Ordinances or parts of Ordinances in conflict with any of the provisions of this Ordinance are hereby repealed." (Vol. II, Tr. 6-10)
DENNIS, Justice, dissenting.
I respectfully dissent.
The majority opinion correctly resolves the question of delegation of power and affirms the holding of the trial judge that La.R.S. 3:1623(D) is unconstitutional. Under either prong of the analysis announced in State v. Broom, 439 So.2d 357 (1983), the statute fails to pass constitutional muster: (1) the standards required for a constitutional delegation are completely absent, (2) the procedural protection required for a constitutional delegation are completely absent.[1]
However, I do not join the majority opinion because it unsatisfactorily addresses the complex question of federal preemption. Even if the statute requiring prior approval by the Commission is unconstitutional, it is still possible that the ordinances are invalid because the field of pesticide regulation may be preempted by federal law. The majority opinion simply concludes that states are free to delegate to political subdivisions the power granted to them by 7 U.S.A.A. § 136v.(a), namely the right to enact more restrictive regulations. While this argument may be valid, I believe that it merits a serious consideration of the entire *356 legislative history of the federal provision.[2]
CALOGERO, Justice, dissenting.
The majority affirms a judgment holding unconstitutional La.R.S. 3:1623(D), a holding which only touches on the larger issue presented in this case, whether the Commissioner of Agriculture is entitled to a declaratory judgment that certain Plaquemine Parish pesticide ordinances are invalid.[1]
The limited majority decision that La.R.S. 3:1623(D) is unconstitutional because it delegates legislative authority without sufficient guiding standards fails to address the other prong of the test set out in State v. Broom, 439 So.2d 357 (La.1983), which could support the constitutionality of the statute.[2]
A more troubling concern for me, however, is that the majority does not even address the Commissioner's major contention, or the issue that is likely dispositive of the case.
The Commissioner argues that even if La.R.S. 3:1623(D) is unconstitutional, the Plaquemine Parish Commission Council does not have the authority to enact ordinances relative to pesticides. He argues that the Federal Government has fully preempted the field, granting the states only the authority to enforce the federal regulations and the authority to enact more restrictive, but not less restrictive or conflicting, provisions than those contained in the Federal Legislation and Regulations. The state governmental subdivisions, absent an express grant of authority by the state legislature, has no such authority. He supports this argument by reference to the legislative history of the federal enactment in which the proposal to likewise grant the state governmental subdivisions the authority to enact more restrictive local ordinances was specifically rejected. Therefore, the Commissioner argues that a finding that La.R.S. 3:1623(D) is unconstitutional leaves Plaquemine Parish with no authority to enact any ordinances regulating pesticides.
While consideration of the Commissioner's argument may not necessarily require us to come to a different result in this case, this dispositive issue in the case should at least be addressed.
The Commissioner's argument is a serious one and is perhaps meritorious considering that this Court found a similar contention meritorious in Rollins Environmental Serv. v. Iberville Parish, 371 So.2d 1127 (La.1979), relative to local ordinances regulating hazardous waste disposal. Therein the Court found the local ordinances unconstitutional upon finding, among other reasons, that the Federal Government with state participation of a limited sort had preempted the field of hazardous waste management.
Therefore, I dissent from the majority's disposition of this case without addressing the principally relevant issue.
NOTES
[1] Carol J. Becnel, Arthur Becnel, Jr., Robert R. Becnel, Sr., Saxon R. Becnel, Sr., Thomas Becnel, Sr., Harold J. Becnel, Sr., Benjamin X. Becnel, Sr., Johnny J. Becnel, Sr., Roy Navarre, Joseph S. Ranatza, Jr., Inc., Joseph S. Ranatza, Jr., Konrad H. Becnel, Sr., Karl D. Becnel, Harold J. Becnel, Jr., Monica Becnel, Saxon R. Becnel, Jr., Cynthia Becnel, Jan B. Becnel, Eddie Navarre, Robin Navarre Sapir, and Thomas Becnel, Jr.
[2] The text of Ordinance 212 is included in the appendix to this opinion.
[3] The text of Ordinance 372 is included in the appendix to this opinion.
[4] The statute was repealed, effective January 1, 1983. Local regulations must now be approved according to the procedures in LSA-R.S. 3:3224 and 3:3214, as follows:

LSA-R.S. 3:3224 provides:
"Parish and municipal governing authorities may adopt local requirements for the sale or application of pesticides only in accordance with the following provisions:
"(1) The governing authority shall adopt a proposed ordinance containing the proposed restrictions.
"(2) The governing authority shall transmit the proposed ordinance to the commissioner with a request for a hearing on the matter.
"(3) The commissioner shall conduct a hearing on the matter in accordance with Section 3214 of this Chapter.
"(4) The commissioner shall approve or disapprove the proposed ordinance.
"(5) If the commissioner approves the proposed ordinance, the governing authority shall publish the proposed ordinance in the official journals of the state and of the parish or municipality.
"(6) The proposed ordinance shall become effective on the thirtieth day after publication.
"(7) The parish or municipal governing authority shall pay all costs of the proceedings under this Section."
LSA-R.S. 3:3214 provides:
"All adjudicatory hearings held by the commission shall be conducted in accordance with the following provisions:
"(1) The commissioner shall convene the commission for the purpose of hearing the matter.
"(2) The commissioner shall appoint a hearing officer, who shall preside over the hearing.
"(3) The commissioner may issue subpoenas to compel the attendance of witnesses or the production of documents and records anywhere in the state in any hearing before the commission.
"(4) The hearing shall be conducted in accordance with the provisions of the Administrative Procedure Act.
"(5) The commission shall make an initial determination on the matter. This determination shall be submitted to the commissioner in writing.
"(6) The commissioner shall make the final determination on the matter. If the determination of the commissioner differs from the determination of the commission, the commissioner shall issue a written opinion based on the record of the hearing.
"(7) Appeals from determinations of the commissioner shall be by civil proceedings in the Nineteenth Judicial District Court."
[5] 7 U.S.C.A., § 136v.(a) provides:

"(a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter."
[6] LSA-Const. Art. IV, § 1(A) provides:

"(A) Composition. The executive branch shall consist of the governor, lieutenant governor, secretary of state, attorney general, treasurer, commissioner of agriculture, commissioner of insurance, superintendent of education, commissioner of elections, and all other executive offices, agencies, and instrumentalities of the state."
[1] While subsection A. of § 1636 provides that decisions of the commission relative to regulation of pesticide application according to time of year, area of application and/or wind velocity must be made in accordance with the administrative procedure act, it is not clear from the statute that this requirement applies to subsection D.
[2] For example, the federal government may still have preempted the field even though it made a conscious choice to allow more restrictive state regulation. Since there is no indication that there was choice to allow the states to delegate this power, the action by the subdivision may be in a federally preempted area.
[1] The Commissioner had contended that the ordinances were illegal because, prior to passage, they were not submitted to a public hearing before the advisory commission on pesticides as is statutorily required by La.R.S. 3:1623(D).
[2] In State v. Broom, supra, we held that in considering whether a delegation of legislative authority is unconstitutional we must consider both the guiding standards and the procedural safeguards which limit the administrative agency's ability to act arbitrarily. A lack of explicit guiding standards is not fatal to the constitutionality of the delegation if procedural safeguards otherwise prevent arbitrary action.