371 So.2d 1127 (1979)
ROLLINS ENVIRONMENTAL SERVICES OF LOUISIANA, INC.
v.
IBERVILLE PARISH POLICE JURY.
No. 63502.
Supreme Court of Louisiana.
May 21, 1979.
*1128 R. Gordon Kean, Jr., John V. Parker, Sanders, Downing, Kean & Cazedessus, Baton Rouge, amicus curiae for Louisiana Chemical Ass'n.
John V. Baus, Harry S. Hardin, III, Samuel O. Buckley, III, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, amicus curiae for Browning-Ferris Industries, Chemical Services, Inc.
Veil David DeVillier, Gen. Counsel, Eunice, Office of Conservation of the State of La., for amicus curiae.
Wallace A. Hunter, William N. Faller, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for plaintiff-respondent.
Patrick W. Pendley, Dana K. Larpenteur, Freeman & Pendley, Ltd., Plaquemine, amicus curiae, for Iberville Parish Police Jury.
*1129 Houston C. Gascon, III, Asst. Dist. Atty., for defendant-applicant.
SUMMERS, Chief Justice.
Presented for consideration is the constitutionality of an ordinance of Iberville Parish prohibiting the disposal of hazardous waste within the boundaries of that parish.
In the month of June 1975 the Police Jury of the Parish of Iberville adopted an ordinance providing for a comprehensive collection and disposal service from the road right-of-way line for all residential and small commercial garbage, trash and light tree debris on a twice-a-week basis. Collection and disposal of industrial garbage and trash, large commercial garbage and trash, construction refuse and hazardous waste were expressly excluded. The purpose of the ordinance is stated to be to protect the public health, safety and welfare, to prevent land, water or air pollution, the spread of disease and creation of nuisances, to conserve natural resources and to enhance the beauty and quality of the environment.
Hazardous waste excluded by the ordinance was defined to include,
". . . such items as petroleum waste; paints; plastics; explosives; acids; caustics; chemicals; poisons; drugs; radioactive materials; asbestos fibers; pathogenic wastes from hospitals; sanatoriums, nursing homes, clinics and veterinary hospitals, offal waste, and the like, which by virtue of their particular composition and inherent dangers, require handling and disposal methods different from those used in other waste materials. In the way of further explanation, `hazardous waste' is solid waste, [whether it] be infectious, explosive, poisonous, caustic, or toxic, or otherwise dangerous or injurious to humans, plant or animal life. (Residential solid waste normally contains some hazardous materials, but because such materials are usually present in very small quantities, their safe disposal either in a sanitary landfill or incinerator presents no special problem. Therefore, residential waste is not considered to be `hazardous waste', as used in this text.)"
Based upon the authority of the ordinance the parish promptly undertook a program of parish-wide pick-up service in the unincorporated areas of the parish. The project has been active since.
On June 14, 1978 Rollins Environmental Services of Louisiana, Inc. (Rollins), plaintiff herein, acquired a deep well disposal facility known as "Schwing B-1" from Clean Land Air Water Corporation (CLAW). The facility consisted of the well, the twenty acres upon which it is situated and certain other items of equipment used in its operation. "Schwing B-1" is located in Iberville Parish and is designed to dispose of liquid industrial residue by injecting it into the surface of the earth. The well had been drilled and operated under a permit issued to CLAW by the Louisiana Department of Conservation, more particularly, in accordance with the provisions of Statewide Order No. 29-N as promulgated by the Department.
On July 18, 1978, the Department of Conservation approved the transfer of CLAW's permit to Rollins. The sale of the deep well disposal facility was consummated on July 28, 1978.
During the interim between the July 14, 1978 agreement to purchase and the closing of the sale between Rollins and CLAW on July 28, 1978, a young man met his death at an open unlicensed waste disposal site in Iberville Parish operated by CLAW.
Prompted by this incident and the innate concern and apprehension associated with the disposal of hazardous waste, on August 3, 1978 the Police Jury amended the original ordinance to provide that
"No person, firm, corporation, or other commercial establishment shall cause, suffer, allow, or permit any `Hazardous Waste' . . . or any other land contaminants to be dumped, discharged, stored, injected, or otherwise disposed of, within the boundaries of the Parish of Iberville, Louisiana, or any land within the confines of said parish."
*1130 The amendment prescribed a fine of $10,000 per day, for each violation with each day constituting a new violation, in addition to a fine of not less than $25 nor more than $100, or imprisonment for not more than thirty days or both for each day the violation continued.
Prior to the effective date of the amendment, the police jury summoned representatives of industry located in the parish to a meeting to solicit their assistance in alleviating the problems involved in disposing of hazardous waste. The meeting held on August 14, 1978 attended by representatives of industry and some state agencies produced no answers to the problems which were satisfactory to the police jury. Accordingly, those present were advised by the jury that the amendment to the ordinance prohibiting the disposal of hazardous waste within Iberville Parish would become effective the following day and its provisions would be enforced.
Faced with the imminent prospect of heavy fines and imprisonment of its officers and employees if the disposal facility were utilized for injection of hazardous industrial wastes as contemplated, Rollins instituted suit the next day to enjoin the enforcement of the ordinance as amended and to have the enactment declared null and unconstitutional.
The trial court denied the injunction and held the ordinance as amended to be constitutional. After a special en banc hearing in the Court of Appeal, the judgment of the trial court was reversed and the August 3, 1978 amendment to the ordinance was declared unconstitutional. The Court of Appeal was of the opinion that the police jury exceeded its constitutional and statutory authority. Certiorari was granted on application of the parish. 365 So.2d 1374.
On this appeal the police jury contends that Section 1236 of Title 33 of the Revised Statutes confers authority upon that body to regulate hazardous waste. In particular it is the power conferred by subsections 16 and 31 which the police jury invokes. These provide:
"The police juries shall have the following powers:
. . . . .
"(16) To enact ordinances and regulations, not inconsistent with the laws and constitution of the United States, nor of this state, to protect their respective parishes against the introduction of every kind of contagious disease.
. . . . .
"(31) To enact ordinances to require, prohibit, or regulate the destruction, disposal, or burning of trash, garbage, leaves, limbs and branches, or debris of any kind and to regulate dumping and the use of borrow pits for sanitary fill." (emphasis added).
Relying upon this statutory authority and its contention that the State has failed to preempt or occupy this field of legislation, the parish contends that it is vested with the inherent power to regulate and control the disposal of hazardous waste for the protection of the health and welfare of its citizens.
The statutory power conferred upon police jurors by subsections (16) and (31) do not specifically confer authority to regulate hazardous waste. The general powers to "protect their respective parishes against introduction of every kind of contagious disease" conferred by subsection (16), and the power to "prohibit, or regulate the destruction, disposal, or burning of trash, garbage, leaves, limbs and branches, or debris of any kind" (emphasis added) conferred by subsection (31), may arguably be extended by construction to include prohibiting any disposal of hazardous waste within a parish. Such a construction, however, is not warranted in the context of those subsections. Nowhere is hazardous waste mentioned. The authorization to protect their parishes against the introduction of "contagious disease" contained in subsection (16) contemplates an area of regulation by police jurors unassociated with the disposal of hazardous industrial waste. Similarly the phrase, "debris of any kind" relied upon by the parish to include hazardous waste, *1131 when considered with "burning of trash, garbage, leaves, limbs and branches", referred to in subsection (31), does not permit the result contended for by the parish. The meaning of words or phrases may be ascertained by the words or phrases with which they are associated. Thus words of general meaning should be applied only to such classes of things of the same general kind as those specifically mentioned. Hazardous waste is not in the same class as "garbage, leaves, limbs and branches" and it follows that hazardous waste should not be considered as "debris of any kind" within the contemplation of this statutory authorization.
A police jury in this State is a creature and subordinate political subdivision of the State and as such only possesses those powers conferred by the State's Constitution and statutes. La.Const. art. VI § 7(A); Union Sulphur Co. v. Parish of Calcasieu, 153 La. 857, 96 So. 787 (1923). Hall v. Rosteet, 247 La. 45, 169 So.2d 903 (1964); State v. Hertzog, 241 La. 783, 131 So.2d 788 (1961); B.W.S. Corporation v. Evangeline Parish Police Jury, 293 So.2d 233 (La.App. 1974).
In any event any such ordinance or regulation must not be "inconsistent with the laws and constitution of the United States, nor of this state" by the express terms of subsection (16). Although this same proposition is not explicitly stated in subsection (31), the principle has general application in our law and applies to subsection (31) by implication. La.Const. Art. VI § 7(A). Therefore, where a police jury has authority to regulate by ordinance in a particular field, the exercise of that authority is dependent upon whether the State legislature has not enacted general laws on the same subject and thereby preempted that field of regulation. State v. Sissons, 292 So.2d 523 (La.1974); National Food Stores of Louisiana, Inc. v. Cefalu, 280 So.2d 903 (La.1973); City of Minden v. Davis Bros. Drug Company, 195 La. 791, 197 So. 505 (1940).
Notwithstanding the absence of legislation empowering the police jury to enact the August 3, 1978 amendment, the police jury maintains that the amendment is authorized under its general powers to protect the health and well-being of the citizens of Iberville Parish. A similar contention was made in City of Minden v. David Brothers Drug Company, 195 La. 791, 197 So. 505 (1940). That case involved the enactment of an ordinance by the city of Minden prohibiting the sale of intoxicating liquor as a medicine without obtaining a permit from the city. State law at the time "legalized the sale and use of intoxicating liquor for medicinal purposes and prescribed the manner and safeguards under which that may be done." In addressing the claim that the ordinance was valid, this Court observed:
"The mere fact that the City of Minden adopted the ordinance under review, ostensibly to prevent the practice of something the municipal authorities deemed detrimental to the peace, good order, and health of the municipality, it is not sufficient to sustain the validity of the ordinance. Unless authority can be found, either in specific language or is fairly implied, in the powers expressly granted to the municipality, authorizing the adoption of the ordinance, it is void. Since we have been unable to find such authority vested in the City of Minden, the ordinance under review must fall."
The principle employed in the foregoing case is applicable here. When applied to the statute and ordinance before us it is readily apparent that the ordinance is not authorized by statute, and its validity cannot be sustained on that basis.
While impliedly recognizing the settled rule that a subordinate political subdivision of the State cannot enact ordinances in a field which is preempted or occupied by the laws and Constitution of the United States or of the State of Louisiana, the police jury takes the position that the statutes in the field of hazardous waste "have proven to be inadequate, misinterpreted and completely unenforced." Further, according to the parish, "the inefficiency of *1132 the State and its agencies in the control and regulation of hazardous waste, and the resulting void that these inefficiencies create with respect to the protection of life and welfare of the people of Iberville Parish" justify the enactment of the ordinance.
Aside from the fact that there is no proof to support these allegations, no authority has been cited to support the claim that ineptness or inefficient enforcement of State statutes justifies the intrusion of a parish into a field occupied by the State's general law.
The recent evolution of environmental legislation at the federal and state levels speaks in unmistakable terms that regulation of hazardous wastes is a matter of broad national and state concern. From a review of this legislation it is apparent that the matter is such that spotty municipal and parochial control would be ineffective. It is not difficult to conclude that if Iberville Parish is permitted to prohibit the disposal of industrial hazardous waste within its borders there will be, in short order, similar ordinances in every parish of the State. Indeed, several parishes have enacted such ordinances. Louisiana's prominent position in industry makes it one of the Nation's foremost producers of chemical and other industrial waste classified as hazardous. As such it cries out against the prospect of such a stifling prohibition.
In the 1970's with the passage of the Clean Air Act (42 U.S.C.A. §§ 7401-7642) and the Water Pollution Control Act Amendments of 1972 (33 U.S.C.A. §§ 1251-1376) the federal government has become involved in this area of environmental control and regulation. These laws impose specific requirements on industrial and other sources of air and water pollution. Implementation of these enactments has required the collection, concentration and disposal of various materials formerly discharged into the air and water. Steps taken as a result of these Acts have not been the complete answer to the problem of hazardous waste disposal, but these efforts have eliminated, to some extent, the unacceptable practices followed before this legislation.
To make the program more comprehensive Congress enacted the Resources Conservation and Recovery Act of 1976 (RCRA), (42 U.S.C.A. §§ 6901-6987) to regulate solid waste disposal. By its terms all federal agencies having functions relating to solid waste or hazardous waste are directed to cooperate with the Administrator of the Environmental Protection Agency (EPA) 42 U.S.C.A. § 6963. And, while the Act speaks in terms of "solid waste" and is known as the Solid Waste Disposal Act, the choice is a misnomer. The definition of "solid waste", as used in the Act, is set forth in Section 6903(27) and includes "solid, liquid, semisolid, or contained gaseous materials resulting from industrial, commercial, mining, and agricultural operations. . . ."
RCRA regulates the entire field of "solid waste" disposal from simple sanitary landfill to industrial waste disposal. Particularly relevant to the case at hand are the provisions of Sub-Chapter III of the Act, 42 U.S.C.A. §§ 6921-6931, entitled "Hazardous Waste Management" prescribing the regulations for disposal of "hazardous wastes", which is defined in Section 6903(5) as follows:
"The term `hazardous waste' means a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical chemical or infectious characteristics may
(a) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or
(b) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed."
An announced congressional purpose in establishing federal minimum standards governing generation, transportation and disposal of hazardous waste was to provide uniformity among the states in the field of hazardous waste disposal regulation. See H.R.Rep. No. 1491, 94 Cong., 2d Sess. 3, *1133 reprinted in [1976] U.S.Code Cong. & Admin.News, pp. 6238, 6268.
Section 6926(b) of RCRA authorizes individual states to develop their own hazardous waste control programs subject to the approval of the administrator of EPA. Section 6926(c) permits states with a hazardous waste program in existence pursuant to state law prior to the promulgation of regulations by EPA to request temporary authorization to carry out such a program under defined minimum standards. Section 6931(a) provides 25 million dollars for the fiscal years 1978 and 1979 for grants to states to develop and implement state hazardous waste programs. These funds are to be allocated to states with authorized programs, pertinently divided on the basis of "the extent of which hazardous waste is generated, transported, treated, stored, and disposed of within such State . . . ." This federal legislation envisions a uniform statewide regulatory scheme to compliment these federal regulations. Ordinances of the parish of Iberville cannot contravene this plan.
The desire to protect the health and safety of the State's citizens, growth of the State's industrial activity and the need to coordinate environmental control regulations with the federal program has prompted the Legislature to act in a number of significant ways in the field of environmental regulation on the state level.
State agencies most involved in environmental regulation and control relating to the problems presented in the instant case are the Department of Conservation (formerly Commissioner of Conservation) and the Department of Health and Human Resources (formerly State Department of Health). By Act 157 of 1940 the Commissioner of Conservation was authorized to "prevent the pollution of fresh water supplies by oil, gas, or salt water . . . ." Under this authority, as the successor agency, the Department of Conservation has been charged with protecting Louisiana fresh water aquifiers from pollution for almost forty years. In that time thousands of brine disposal wells have been permitted at oil field sites throughout the state. At this time there are approximately 1,510 such active brine disposal wells in Louisiana.[1]
Act 122 of 1976 (La.Rev.Stat. 30:1(D), 3(1)(c), 3(15), 4(C)(16)) restates and clarifies the authority of the Department of Conservation to regulate and permit other disposal wells in addition to brine disposal wells. This legislation specifically authorizes the Commissioner of Conservation to make rules, regulations and orders relating to the injection of waste products into the subsurface. Pursuant to that authority the Commissioner has issued statewide Order 29-9, a comprehensive set of regulations establishing the criteria to be met in order to obtain a disposal well permit.
The Department of Health and Human Resources is vested with exclusive jurisdiction over the handling, storage and disposal of waste materials, including solid and liquid residue. La.Rev.Stat. 40:5. Furthermore, Act 675 of 1977 (La.Rev.Stat. 40:1299.36) grants extensive authority to the Department to regulate and permit the disposal of waste material, including both solid and liquid wastes from industrial, commercial and agricultural operations.
The most recent development in State legislation in the field of hazardous waste is the enactment of Act 334 of 1978 (La.Rev. Stat. 30:1101-1116) in which the State has proceeded by coordinating its plan with RCRA to develop its own hazardous waste control program. The enactment is also designed to obtain federal funding for the State under RCRA 42 U.S.C.A. 6726(a); La. Rev.Stat. 30:1103(C), 1103(E), 1104.
Act 334 conferred upon the Department of Natural Resources exclusive jurisdiction for the development, implementation, and enforcement of a comprehensive state hazardous waste control program consistent with federal laws and regulations, (La.Rev. *1134 Stat. 1103A). The Act defines hazardous waste as follows:
"Any waste, or combination of wastes, which because of its quantity, concentration, physical, chemical or infectious characteristics may (1) cause or significantly contribute to an increase in mortality or an increase in serious irreversible or incapacitating reversible illness or (2) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, disposed of or otherwise managed . . . ." R.S. 1102(3)
This definition of hazardous waste is the definition the State adopted from that prescribed by Congress. When it is compared to the definition in the August 3, 1978 amendment to the Iberville Parish Ordinance it is apparent that the substances the State has chosen to regulate are the same substances prohibited in the amendment to the ordinance.
This latest expression of the legislature when considered with the previous legislation on the same subject demonstrates an affirmative and positive preemption by the state and federal governments in the field of hazardous waste regulation.
The Court is of the opinion, therefore, that the August 3, 1978 amendment to the Iberville Parish Ordinance in question is not authorized by the Legislature. We are moreover of the opinion that the federal and state governments have preempted the field of hazardous waste regulation as defined in the August 3, 1978 amendment to the ordinance. The amendment is therefore inconsistent with the State's general law. As such it is unconstitutional, null and ineffective.
For the reasons assigned, the judgment of the Court of Appeal is affirmed.
CALOGERO and DENNIS, JJ., concur.
TATE, J., concurs and assigns reasons.
DIXON, J., concurs in the result only.
BLANCHE, J., recused.
TATE, Justice, concurring.
I concur in the result reached by the majority. However, it may be appropriate to note that the language describing the limited and merely delegated authority of local police juries is subject to qualifications and explanations not expressly set forth by the majority opinion.
Under the constitution of 1921, local governing authorities (except in the case of specific home rule exceptions) were creatures of the state exercising delegated authority only as conferred by legislation. However, the constitution of 1974 changed this concept and greatly expanded the areas of local authority. See Kean, Local Government and Home Rule, 21 Loyola L.Rev. 63 (1975) for an authoritative and comprehensive discussion.
Under Article 7, Section 7(A), a local governing authority without a home rule charter (such as the present police jury) "shall have the powers authorized by this constitution or by law", unless by vote of the electorate the local authority is empowered to exercise "any power . . . not denied by its charter or by general law." Any grant of power to a local government is, of course, subject to the constitution and may not be "inconsistent" therewith. Article 7, Section 7(A).
My chief reservation concerns the broad language of the majority opinion describing the limited powers possessed by police juries, to the effect that they must be expressly delegated by the legislature. The cited jurisprudence, interpreting the pre-1974 constitutional provisions, were indeed to this effect.
The present police jury has not adopted a home rule charter, nor has it by vote of the people been empowered to exercise powers not "denied" by state law. Therefore, it is not inaccurate to hold, as the majority does, that the defendant jury was not "authorized by this [1974] constitution or by law [legislation]", Article 7, Section 7(A), to adopt the ordinance at issue regulating hazardous waste.
*1135 The broad language of our majority opinion, however, inadvertently implies that all police juries only possess powers authorized by statutewhereas many police juries and local governing authorities have adopted home rule provisions or by vote of the people have been empowered to exercise all powers not denied by statute or the constitution.
In the present case, of course, all local governing authorities, whether or not of only authorized (delegated) powers such as the present police jury, have been denied the power to adopt local ordinances independently regulating the disposal of hazardous wastes (as contrasted with implementing state statutes and regulations in the area) by Act 334 of 1978, La.R.S. 30:1101-116. By this enactment, the Department of Natural Resources is granted "exclusive jurisdiction for the development, implementation, and enforcement of a comprehensive state hazardous waste control program * * *." 30:1108. See also La.R.S. 40:5 (1976), granting state agencies "exclusive jurisdiction, control and authority . . . over the handling, storage and disposal of waste materials, including solids and liquid residues."
The majority's rationale is not inconsistent with these comments. Nevertheless, to avoid future misunderstanding, it seems preferable by these clarifying comments to expressly note what is merely implicit in the majority's opinionthat the language describing the limited, delegated powers of the present police jury was not intended to apply to any police juries which have been empowered to exercise all powers not denied them by state law or inconsistent with the state constitution.
NOTES
[1] Report on Industrial Waste Disposal Wells Permitted by the Office of Conservation 19 (June 1978).