609 So.2d 201 (1992)
AMERICAN WASTE AND POLLUTION CONTROL CO.
v.
ST. MARTIN PARISH POLICE JURY and the Parish of St. Martin.
No. 92-CA-1433.
Supreme Court of Louisiana.
November 30, 1992.
Dissenting Opinion December 1, 1992.
*202 Bernard E. Boudreaux, Jr., Dist. Atty., Randall P. Serrett, John P. Haney, Asst. Dist. Attys., for applicant.
Michael G. Durand, Virgil E. Wilson, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, for respondents.
Dissenting Opinion of Justice Dennis December 1, 1992.
HALL, Justice.
This is a suit for a declaratory judgment on the constitutionality of certain parish ordinances. The primary issue presented is whether the St. Martin Parish Police Jury has the authority, constitutional or legislative, to zone or restrict land use. The district court found the parish lacked the authority to do so and thus found a zoning ordinance and a siting ordinance enacted by the parish unconstitutional. We affirm.

I.
In February 1988, American Waste Pollution Control Company ("American") initiated procedures with the Louisiana Department of Environmental Quality ("DEQ") to secure a permit to construct a solid waste disposal facility on property located in St. Martin Parish.[1] In December 1988, the St. Martin Parish Police Jury enacted a string of land use and zoning ordinances. Thereafter, the police jury rescinded all but two of the ordinances; those two ordinances are the subject of this appeal. The first, adopted on December 6, 1988, is a zoning ordinance setting forth a comprehensive parish-wide land use plan. The other, adopted on December 20, 1988, is a siting ordinance setting forth requirements for the initial siting of solid waste landfills in St. Martin Parish.
In January 1989, American commenced this action seeking declaratory and injunctive relief, claiming that the zoning and siting ordinances are unconstitutional as St. Martin Parish lacked the authority to pass them. In March 1990, American filed a motion for summary judgment, which the district court granted. The district court reasoned that these ordinances are "unconstitutional as the St. Martin Parish Police Jury does not have legislative or constitutional authority to zone or restrict land use." Judgment was signed on April 19, 1991.
The parish filed this direct appeal pursuant to La. Const. of 1974, Art. V, § 5(D)(1).

II.
Under the 1974 Louisiana Constitution, two forms of local government subdivisions are recognized: (1) home rule charter, and (2) non-home rule charter. La. Const. of 1974, Art. 6, §§ 5(E) and 7(A). A home rule charter political subdivision is afforded much autonomy; it is authorized to exercise any powers "not denied by general law or inconsistent with this constitution." La. Const. of 1974, Art. 6, § 5(E); Francis v. Morial, 455 So.2d 1168, 1171 (La.1984) (noting that home rule charter government possesses powers in local affairs within its jurisdiction as broad as that of the state, except when limited by the constitution); See Kean, Local Government and Home Rule, 21 Loy.L.Rev. 63 (1975).
*203 In stark contrast, a non-home rule charter political subdivision is afforded little autonomy; it is authorized only to exercise those powers "not denied by its charter or by general law, if a majority of the electors voting in an election held for that purpose vote in favor of the proposition that the governing authority may exercise such general powers. Otherwise, the local governmental subdivision shall have the powers authorized by this constitution or by law." La. Const. of 1974, Art. 6, § 7(A). Translated, this means that absent voter approval, a non-home rule charter political subdivision, such as St. Martin Parish, can exercise only those powers expressly granted by the constitution or by the legislature. See Stetter, Louisiana Environmental Handbook, Sec. 3.4 (1991).
We have recognized a parish government's limited legislative powers, noting that "[a] police jury in this State is a creature and subordinate political subdivision of the State and as such only possesses those powers conferred by the State's Constitution and statutes." Rollins Environmental Services of Louisiana, Inc. v. Iberville Parish Police Jury, 371 So.2d 1127, 1131 (La.1979). However, as aptly pointed out by Justice Tate in his concurrence in Rollins, supra, this statement regarding the limited powers of police juries only applies when a police jury and local governmental authority has not adopted a home rule charter or by vote of the electorate been empowered to exercise all powers not denied by statute or the constitution. Rollins, supra, 371 So.2d at 1134-35. Nonetheless, as St. Martin Parish has no home rule charter, nor has it by vote of the electorate been empowered to exercise powers not denied by state law, its powers are limited to those conferred by the constitution or by the legislature.
With these precepts of local government authority in mind, we turn to the issue before us of whether the St. Martin Police Jury was authorized by the constitution or by the legislature to adopt the zoning and land use (siting) ordinances at issue.
The Police Jury's constitutional authority, if any, to enact such ordinances must stem from La. Const. of 1974, Art. 6, § 17, which provides:

Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained. (emphasis supplied).
The underscored language is the crux of this case. American contends, as held by the district court, that this language means that unless and until the legislature enacts uniform procedures, parishes lack the authority to enact land use and zoning ordinances. Conversely, St. Martin Parish contends that it simply means that if the legislature adopts uniform procedures, then parishes must follow them in enacting such ordinances, which parishes are authorized to do by this provision.
Construing La. Const. of 1974, Art. 6, § 17 in conjunction with the limited powers granted to parishes as non-home rule charter local governmental subdivisions, we find, as did the district court, that this provision is not an unqualified grant of zoning authority. This interpretation is consistent with the views voiced by the delegates to the Louisiana Constitutional Convention prior to adopting this provision. Particularly, the delegates voiced concern that unbridled powera "blank check" not be granted to local governmental units, but rather that there should be uniform procedures for the exercise of these powers. Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Vol. VII, 58th Days Proceedings, October 2, 1973, pp. 1536-49.
While the legislature has enacted such uniform procedures for municipalities, LSA-R.S. 33:4721, et seq., no such enabling *204 legislation or uniform procedures have been enacted for parishes, generally. A perusal of the Revised Statutes, however, reveals that the Legislature has extended zoning authority to certain parishes. For instance, LSA-R.S. 33:4877 grants zoning authority to any parish having a population of over twenty-three thousand in which there is no municipality.[2] A number of enabling statutes with comprehensive provisions substantially similar to those applicable to municipalities have been enacted granting zoning authority to specific parishes. See, e.g., LSA-R.S. 33:4780.1, et seq. (granting zoning authority to St. Helena Parish). No such statute has been enacted for St. Martin Parish. The enactment of specific enabling legislation indicates a legislative interpretation, entitled to some weight, that Art. 6, § 17 is not a blanket, unqualified grant of zoning authority to parishes.
We conclude, as did the district court, that under the constitution, parishes are only given the power to zone or regulate land use if the legislature establishes uniform procedures for the exercise of such power. Since the legislature has not established such uniform procedures for parishes generally or for St. Martin Parish specifically, as it has for municipalities and certain other parishes, St. Martin Parish lacks the authority under the constitution to enact such ordinances.
Nonetheless, St. Martin Parish further contends that the legislature expressly has bestowed police juries with the authority to enact solid waste disposal siting ordinances, citing LSA-R.S. 33:1236(31):
The police juries and other parish governing authorities shall have the following powers: ...
(31) To enact ordinances to require, prohibit, or regulate the destruction, disposal, or burning of trash, garbage, leaves, limbs and branches, or debris of any kind and to regulate dumping and the use of borrow pits for sanitary fill. However, no parish or municipality shall engage in any regulation of the generation, transportation and/or disposal of hazardous wastes other than the initial siting of facilities pursuant to general land use planning, zoning, or solid waste disposal ordinances. (Emphasis supplied).
The wording of LSA-R.S. 33:1236(31) authorizing such siting ordinances to be enacted pursuant to "general land use planning, zoning, or solid waste disposal ordinances," as an exception to the prohibition against the regulation of hazardous wastes, does not grant, but rather presupposes that the police jury has been granted authority to enact such ordinances. Thus, we agree with the district court's reasoning:
This is not a grant of authority by the Legislature allowing a police jury to regulate the initial siting of solid waste disposal facilities. The language used in the statute is that the initial siting of facilities shall be pursuant to general land use planning, zoning, or solid waste disposal ordinances. Where a governing body is not authorized to enact zoning ordinances, the last sentence of LSA-R.S. 33:1236(31) would not apply.
As American correctly points out, this construction of LSA-R.S. 33:1236(31) both gives effect to that statute and adheres to La. Const. of 1974, Art. 6, § 17.[3]
Palermo Land Co., Inc. v. Planning Commission of Calcasieu Parish, 561 So.2d 482 (La.1990), cited by St. Martin Parish, lends no support to its position. That case is authority only for the proposition that a parish, with zoning authority granted by the legislature prior to the 1974 *205 constitution, may regulate siting of a solid waste disposal project through a general land use zoning ordinance. The holding of that case has no applicability here where the parish has no general zoning power.
Accordingly, we hold that the St. Martin Parish Police Jury lacks the authority, constitutional or legislative, to enact the zoning and siting ordinances which are the subject of this suit.

III.
For the reasons set forth above, we affirm the judgment of the district court that the zoning and siting ordinances passed by the St. Martin Parish Police Jury on December 6 and 20, 1988, respectively, are unconstitutional.
AFFIRMED.
LEMMON, J., dissents and assigns reasons.
DENNIS, J., dissents with reasons.
LEMMON, Justice, dissenting.
La. Const. art. VI, § 17, authorizes generally the enactment of zoning ordinances by local governmental subdivisions, subject to any uniform procedures previously adopted by the Legislature and to any uniform procedures that the Legislature may adopt in the future. The ordinances at issue were adopted pursuant to this general authority and are constitutionally valid.
DENNIS, Justice, dissenting.
I respectfully dissent.
A non-home rule governmental subdivision may exercise the powers authorized by the constitution or by law. La. Const.1974, Art. VI, § 7.
The constitution expressly provides that "[s]ubject to uniform procedures established by law, a local governmental subdivision may ... adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose * * * ". La. Const.1974, Art. VI, § 17. In my opinion, this is a direct, self executing grant of power to parishes to regulate land use and zoning subject only to the legislature's authority to establish uniform procedures for its exercise. Art. VI, § 17 is markedly different in concept and language from mere hortatory or non-self executing grants of authority, subject to legislative approval, such as Art. VI, § 18(A) ("The legislature by law may authorize parishes to create and define industrial areas ..."); id., § 19 ( ... the legislature... may create or authorize the creation of special districts ..."); id., § 1(B) ("The legislature by law may establish and organize new parishes ..."); id., § 2 ("The legislature shall provide by general law for the incorporation, consolidation, merger, and government of municipalities."). See Hargrave, "Statutory" and "Hortatory" Provisions of the Louisiana Constitution of 1974, 43 La.L.Rev. 647 (1983).
On the contrary, Art. VI § 17 is analogous to other self executing direct grants of power by the constitution to local governments such as Art. VI, § 1(C) ("The governing authority of a parish may call an election on the question of changing the parish seat."); id., § 5(A) ("Subject to and not inconsistent with this constitution, any local governmental subdivision may draft, adopt, or amend a home rule charter...."); id., § 7 ("Subject to and not inconsistent with this constitution, the governing authority of a [non-home rule government may exercise appropriate management powers if authorized by its electorate.]"; id., § 19 ("Subject to and not inconsistent with this constitution, the legislature ... may create or authorize the creation of special districts...."); id., § 23 ("Subject to and not inconsistent with this constitution and subject to restrictions provided by general law, political subdivisions may acquire property....").
Consequently, the legislature's failure to adopt uniform procedures for local governmental regulation of land use and zoning cannot defeat or thwart the exercise of that self executing grant of power. If it had been the intention of the convention, as approved by the voters, to give the legislature such veto power, the provision would have stated that "The legislature may authorize parishes to regulate land use and *206 zoning subject to uniform procedures established by law"; or, the provision would have been omitted altogether, which would have had the same effect.
Moreover, the majority's treatment of Art. VI, § 17 converts it into something much worse than a mere hortatory provision. Instead of reading Art. VI, § 17 as extending self executing authority to adopt land use regulations to all local governmental subdivisions, the majority opinion implies that no local government, not even a home rule charter government, may proceed with zoning regulations until authorized to do so by the legislature. Furthermore, my colleagues' opinion also seems to imply that a parish's power to acquire property under Art. VI, § 23 is not self executing but dependent on legislative prerogative. In my opinion, it was clearly not the constitutional intent to create such potential stumbling blocks to either land use regulation or acquisition of property by local governments. Rather, the constitutional aim was to promote such local self government subject only to the power of the legislature to impose whatever uniform procedural controls it deemed advisable.
Finally, I respectfully disagree with the majority's unjustified characterization of non-home rule governments merely as "creatures" of the legislature. The 1974 Constitution greatly expanded the authority of local government compared to the authority delegated to them as "mere creatures" of the state under the 1921 Constitution. See Justice Tate's concurring opinion in Rollins Environmental Serv. v. Iberville Parish Police Jury, 371 So.2d 1127, 1134; Kean, Local Government and Home Rule, 21 Loy.L.Rev. 63 (1975).
NOTES
[1] The DEQ has now granted American a permit to construct a solid waste facility at the St. Martin Parish site.
[2] LSA-R.S. 33:4877 provides:

The governing authority of any parish having a population of over twenty-three thousand in which there exists no municipality is authorized to zone their territory, to create residential, commercial and industrial districts, and to prohibit the establishment of places of business in residential districts.
It is conceded that St. Martin Parish does not fit within this category.
[3] In light of our conclusion that St. Martin Parish lacked the authority to enact these ordinances, we do not reach the Parish's argument that the State has not preempted regulation of solid waste disposal siting.