663 So.2d 257 (1995)
TWIN PARISH PORT COMMISSION, Plaintiff-Appellant,
v.
BERRY BROTHERS, INC. and Equitable Storage Company, Defendants-Appellees.
No. 95-425.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1995.
Writ Denied January 5, 1996.
*258 Theodore Michael Haik Jr., New Iberia, J. Arthur Smith III, Baton Rouge, for Twin Parish Port Commission.
James Leeper Ellis, Baton Rouge, Oscar E. Reed Jr. and Edgar D. Gankendorff, Lafayette, for Berry Brothers, Inc. and Equitable Storage Company.
Hal James Broussard, Lafayette, for Louisiana Oilfield Contractors Ass'n.
Richard Phillip Ieyoub, Baton Rouge, for amicus curiae State of Louisiana.
April Rose Snellgrove, Baton Rouge, for amicus curiae D.E.Q.
Before SAUNDERS and SULLIVAN, JJ., and KNIGHT, J. Pro Tem.[1]
SAUNDERS, Judge.
The questions concern the inherent powers, if any, of the Twin Parish Port Commission, a non-home rule charter political subdivision of this state, to enact regulations in fields where it lacks an affirmative grant of constitutional or statutory authority. The questions arise in the context of two ordinances, one purporting to govern zoning or land-use, and the other concerning regulation of the environment.
Both ordinances were declared unenforceable by the trial court. We agree and dismiss the Commission's action.

FACTS
Plaintiff, the Twin Parish Port Commission (the "Commission"), sued for an injunction and declaratory judgment seeking to prevent defendants, Berry Bros., Inc. and Equitable Storage Company, from constructing and operating a natural gas storage facility on Lake Peigneur, located in Iberia Parish.
The Commission alleged that the proposed construction and operations would violate two of its ordinances, No. 10 which prohibits dredging and excavating of any portion of the water bottom of Lake Peigneur, and No. 3 which prohibits the discharge of oil, grease and refuse into the lake. After a hearing, the district court rendered judgment in favor of the defendants, finding Ordinance No. 10 "unconstitutional" because it was not enacted in compliance with Louisiana Open Meeting Laws, La.R.S. 42:4.1-13. Ordinance No. 3 was declared unenforceable because, according to the trial court's reasons, the environmental regulation of the state's waters is *259 preempted by statutes and regulations promulgated by the state and federal governments governing the Louisiana Department of Environmental Quality.
Following the district court's decision, the Commission invoked the Louisiana Supreme Court's appellate jurisdiction on grounds that the trial court's finding Ordinance No. 10 "unconstitutional" rendered the matter directly appealable to the Louisiana Supreme Court. La. Const. art. V, § 5(D). After studying the matter, however, the Louisiana Supreme Court transferred the appeal to this court, observing that ordinance 10 was declared invalid, not because it was "unconstitutional" as the trial court improperly concluded, but because it was enacted in violation of the Open Meeting Laws of this state. Twin Parish Port Commission v. Berry Bros., Inc., et al, 94-2594 (La. 2/20/95), 650 So.2d 748. Because the Supreme Court had no overriding interest to consider the validity of Ordinance No. 3, it declined to consider that question as well. Thus, both Ordinances No. 3 and 10 are presently before this court on appeal from the trial court.

ORDINANCE NO. 3
The first issue we address is the validity of Commission Ordinance No. 3, which makes it unlawful to discharge "any oil, grease or refuse matter" into any navigable water, including Lake Peigneur, within the district of the Twin Parish Port Commission.
The question is whether the Commission is preempted by state and federal law from enacting these provisions as the trial court concluded. The Commission suggests that La.R.S. 34:1603 authorizes its enactment. This statute sets forth the rights and powers of the Commission and its governing board. Additionally, the Commission opposes the arguments that state and federal law preempt the environmental field.
The trial court concluded that the Commission acted beyond its authority in passing and enforcing the ordinance. We agree. We hold that the Commission, a non-home rule charter entity, is not authorized to enact environmental legislation pertaining to the state's waters. Responsibility for formulating and promulgating environmental regulations lies exclusively with state government, specifically the Department of Environmental Quality and its Office of Water Resources.
La.R.S. 30:2074 is clear in this regard.
Sec. 2074. Office of the secretary of environmental quality; powers and duties
A. The office of the secretary shall have the following powers and duties:
(1) To prepare and develop a general plan for the proper protection and control of the waters of the state.
(2) To make investigations on its own motion or upon the complaint of any person and by appropriate order to control, regulate, or restrain the discharge of any waste material or polluting substance discharged or sought to be discharged into any waters of the state in accordance with the provisions of R.S. 30:2025.[2]
(3) To process all applications for certifications which applicants for federal or state licenses or permits are required to provide to the appropriate agency....
* * * * * *
B. The secretary shall have the following powers and duties:
(1) To establish such standards, guidelines, or criteria as he deems necessary or appropriate to prohibit, control, or abate any of the following:
(a) Water pollution.
* * * * * *
(3) To adopt and promulgate rules and regulations consistent with the general intent and purposes of this Chapter to prevent *260 water pollution, including but not limited to the following:
* * * * * *
(b) Regulations requiring compliance with pretreatment standards and requirements in accordance with ... the Federal Water Pollution Control Act.
* * * * * *
(d) Regulations prohibiting the unpermitted discharge of untreated or improperly treated wastes.
(4) To develop permitting procedures and to require and issue permits, variances, LPDES variances, licenses, or compliance schedules for all waste water discharges, discharges of waste, or sources of water pollution to the surface waters of the state....
(5) To adopt and promulgate rules and regulations to provide for the cleanup and remediation of any pollution of waters of the state.
* * * * * *
(7) To establish such standards, guidelines, or criteria by rule as he deems necessary to prevent the discharge from water crafts... of trash, garbage, and untreated or improperly treated sewage or sewage sludge in an amount, manner, or area which would further degrade the quality of anchorage waters or certain immediately adjacent waters within Louisiana....
* * * * * *
C. The office of the secretary shall, in conjunction and coordination with the Department of Natural Resources, conduct a risk analysis of the discharge of produced waters, excluding cavern leach waters, from oil and gas activities onto the ground and into the surface waters in the coastal wetlands of this state. The analysis shall examine the environmental risks and economic impact of allowing such discharges in the coastal wetlands and the economic impact on the oil and gas industry if such discharges are prohibited....
La.R.S. 30:2074.
In Rollins Environmental Serv. v. Iberville Parish Police Jury, 371 So.2d 1127 (La. 1979), the Louisiana Supreme Court struck down a parish ordinance purporting to independently regulate hazardous waste. In doing so, the Supreme Court held that the existence of a comprehensive state environmental statutory scheme (in that case, involving hazardous waste) preempted enforcement by local governments of local ordinances designed to independently regulate, as contrasted with implementing governing state statutes and regulations, the area so occupied. Its basis for doing so was not only legal but practical.
The recent evolution of environmental legislation at the federal and state levels speaks in unmistakable terms that regulation of hazardous wastes is a matter of broad national and state concern. From a review of this legislation it is apparent that the matter is such that spotty municipal and parochial control would be ineffective.
Rollins Environmental Serv., 371 So.2d at 1132.
By analogy, we conclude that the trial court acted correctly with regard to Ordinance No. 3. In accord, Desormeaux Enterprises, Inc. v. Village of Mermentau, 568 So.2d 213 (La.App. 3 Cir.1990). Its decision is supported not only by legislation granting the state broad powers to regulate the environment, but by the absence of statutory authority granting the Twin Parish Port Commission concurrent jurisdiction.[3]
*261 In so holding, we do not suggest, of course, that the environment is of no importance to this state or this tribunal.[4] Nor do we suggest that the interests of local citizenry or institutions in vigilantly safeguarding the environment is to be discouraged. Rather, we merely suggest that when asked (as we are now) who between the Port Commission and the state is ordained by the laws of this state and its people to safeguard the water quality of Lake Peigneur, the answer to that question is the state, exclusively. Thus, for the reasons articulated in Rollins and its concurring opinion, we conclude the Twin Parish Port Commission lacked the requisite authority to separately regulate this *262 area. While the Commission and local citizens have a legitimate stake in the protection of their waters, their interest in doing so must be advanced by petition or complaint to the Department of Environmental Quality, whose Secretary is not only empowered but duty-bound to investigate any allegations of environmental abuse. La.R.S. 30:2074(A)(2). The Commission is not permitted to issue regulations in its own right, however, absent constitutional or statutory authority which it currently lacks.

ORDINANCE NO. 10
The second item of contention, Ordinance No. 10, declares Lake Peigneur to be a scenic water body and declares as unlawful any dredging or excavation of the water bottom. The trial court determined that Ordinance No. 10 was invalid due to the Port Commission's failure to comply with the Open Meetings statute La.R.S. 42:4.1, et seq. Although this finding has been appealed, we need not reach the issue.
Instead, we examine another issue briefed by the parties, whether the Commission was empowered to enact the Ordinance at all in the first place. We find that the Commission lacked the authority to enact and enforce Ordinance No. 10 and dismiss its claims, pretermitting all other issues.
The state owns the beds of navigable waterways, Gulf Oil Corp. v. State Mineral Bd., 317 So.2d 576 (La.1975), and the state's freedom to lease state lands and water bottoms, is protected by provisions of this state's Constitution, Revised Statutes and Civil Code.[5]
Additionally, as appellees correctly observe, only parishes and municipalities, subject to uniform procedures established by law are constitutionally granted authority to adopt regulations for land use and zoning; political subdivisions[6] such as the Commission are not. La. Const. arts. VI, §§ 17 and 44.[7]
The Commission maintains that the Louisiana Constitution provides that the legislature may create or authorize the creation of special districts and grant them such rights and powers as it deems proper, and reiterates its argument that La.R.S. 34:1603 is sufficiently broad to validate Ordinance No. 10. Although the Commission's view of the legislature's freedom to grant powers to special districts may be more fettered than the Commission suggests, as La. Const. art. 6, § 19 expressly conditions the legislative award of *263 those powers upon their being "[s]ubject to and not inconsistent with [the] constitution," in the end this minor discrepancy is of no moment when compared to the lack of any constitutional or statutory authority supporting the Commission's regulation of land use or involvement in zoning.[8]
The exception of no right of action is a threshold device that questions whether the litigant who sets forth a cause of action has any interest in enforcing judicially the right asserted. Lambert v. Donald G. Lambert Const. Co., 370 So.2d 1254 (La. 1979); Meche v. Arceneaux, 460 So.2d 89 (La.App. 3 Cir.1984). Can the legal remedy afforded by law be invoked by this particular plaintiff? Moyers v. Altmann, 594 So.2d 6 (La.App. 3 Cir.1992). The exception of no cause of action, on the other hand, questions whether the law affords any party a remedy for the particular grievance alleged. Law v. City of Eunice, 626 So.2d 575 (La.App. 3 Cir.1993).
The Commission lacks the capacity to proceed, and we dismiss on that basis. See La.Code Civ.P. art. 927, permitting notice of such a peremptory exception by this court.
Lacking constitutional or statutory authority, the Commission, a non-home rule charter political subdivision, Cf., City of New Orleans v. Board of Com'rs, 93-0690 (7/5/94), 640 So.2d 237,[9] was powerless to enact Ordinance No. 10, which not only restricts where an activity permitted by state law may occur, but prevents its very occurrence. Cf., St. Charles Gaming v. Riverboat Gaming Commission, 94-267 (La. 1/17/95), 648 So.2d 1310.[10] Thus, to the extent that Ordinance No. 10 completely prohibits dredging or submarine excavation, it is invalid.

CONCLUSION
There being no legal support for the Twin Parish Port Commission, a nonmunicipal, nonparochial, non-home rule charter political subdivision, to concern itself with environmental or land use regulation, its action is dismissed, at its cost.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed, at the Twin Parish Port Commission's costs.
AFFIRMED.
NOTES
[1] Judge William N. Knight of the Thirty-first Judicial District participated in this decision as judge pro tempore by appointment of the Louisiana Supreme Court.
[2] La.R.S. 30:2025 empowers the Secretary of D.E.Q. to sue for damages, issue cease and desist orders, and assess civil penalties. La.R.S. 30:2025(A)(1), entitled "General enforcement power," provides as follows:

Sec. 2025. Enforcement
A. General enforcement power.
(1) Any civil action necessary to carry out the provisions of this Subtitle shall be brought by the secretary or upon the direction of the [Environmental Control Commission]. In such suits, the secretary or commission shall be represented by the attorney general.
[3] La.R.S. 34:1603, the provision setting forth the rights and powers of the Commission's governing body, directs the Commission "to regulate commerce and traffic." It does not authorize the Commission to issue ordinances protecting the environment.

Sec. 1603. Rights and powers of board
The board may, upon such terms as it may agree upon, contract for legal, financial, engineering and other professional services necessary or expedient in the conduct of its affairs, and it may, upon terms and conditions mutually agreeable, utilize the services of the other executive departments of the state.
The district shall regulate the commerce and traffic within such port area in such manner as may, in its judgment, be for the best interest of the state. It shall have charge of and administer public wharves, docks, sheds and landings, and shall be empowered to construct or acquire and equip wharves and landings and other structures useful for the commerce of the port area and to provide mechanical facilities therefor; to construct slips and inlets and wharves for the facilitation of agricultural commodities including, but not limited to slips and inlets and wharves for the transportation of agricultural commodities and the facilitation of handling facilities; to construct inlets, slips, wharves and all other structures for the facilitation and handling and sale of all natural resources, including but not limited to all forms of seafood; to erect sheds or other structures on such wharves and landings; to maintain proper depths of water at all such wharves and landings; to provide light, water, police protection and other services for its facilities as it may deem advisable; to construct or acquire, maintain and operate basins, locks, canals, warehouses and elevators; to charge for the use of all facilities administered by it and for all services rendered by it, such fees, rates, tariffs, or other charges as it may establish; to establish harbor lines within the port area by agreement with the Corps of Engineers; and to construct, own, operate and maintain terminal rail facilities and other common carrier rail facilities for the purpose of rendering rail transportation to and from the facilities to be erected, owned and operated by the district in both intrastate and interstate commerce; and to construct recreational facilities to accommodate existing and future industry. The legislature shall not impair any contract lawfully entered into by the district. Title to all property and improvements thereon operated by the district shall vest in the Twin Parish Port District. (Emphasis added.)
The district may charge a reasonable fee to each vessel arriving in the port area in ballast or carrying cargo of any kind. It may also charge for each copy of any certificate issued by it or by any of its officers or employees for inspecting hatches, surveying cargo, or making other surveys or inspections of vessels in the port area, but shall furnish, without charge to the master of each such vessel one copy of all surveys upon his vessel or cargo.
The district shall have authority to make and enter into contracts, leases and other agreements with railroads, trucking companies, barge lines and with any and all companies interested in the transportation, storage and shipping of goods and other products, whether by rail, truck line, barge line, ocean going vessels or otherwise for the use of facilities administered by the district or any part or portion thereof, for a period of time not exceeding forty years. No exclusive franchise, however, shall be granted to any carrier.
The district is further authorized to receive, by gift, grant, donation or otherwise any sum of money, aid or assistance from the United States, the state of Louisiana, or any political subdivision thereof.
[4] To the contrary, the state's environment is explicitly of great interest to public policy makers as witnessed by the following legislative extracts:

LSA-R.S. 30:2002:
The legislature finds and declares that:
(1) The maintenance of a healthful and safe environment for the people of Louisiana is a matter of critical state concern.
(2) It is necessary and desirable for the protection of the public welfare and property of the people of Louisiana that there be maintained at all times, both now and in the future, clean air and water resources, preservation of the scenic beauty and ecological regimen of certain free flowing streams, and strictly enforced programs for the safe and sanitary disposal of solid waste, for the management of hazardous waste, for the control of hazards due to natural and man-made radiation, considering sound policies regarding employment and economic development in Louisiana.
* * * * * *
La.R.S. 30:2003:
A. The maintenance of a healthful and safe environment in Louisiana requires regulation and control over the areas of water quality, air quality, solid and hazardous waste, scenic rivers and streams, and radiation.
B. In order to accomplish these goals most efficiently, it is necessary to provide for comprehensive policies on a statewide basis to unify, coordinate, and implement programs to provide for the most advantageous use of the resources of the state and to preserve, protect, and enhance the quality of the environment in Louisiana.
La.R.S. 30:2072:
The legislature finds and declares that the waters of the state of Louisiana are among the state's most important natural resources and their continued protection and safeguard is of vital concern to the citizens of this state. To insure the proper protection and maintenance of the state's waters, it is necessary to adopt a system to control and regulate the discharge of waste materials, pollutants, and other substances into the waters of the state.
[5] La. Const. art. 9, Section 3:

Alienation of Water Bottoms
Section 3. The legislature shall neither alienate not authorize the alienation of the bed of a navigable water body, except for purposes of reclamation by the riparian owner to recover land lost through erosion. This Section shall not prevent the leasing of state lands or water bottoms for mineral or other purposes. Except as provided in this Section, the bed of a navigable water body may be reclaimed only for public use.
La.R.S. 41:1211:
Lessor defined
For the purposes of this Part, the term "lessor" shall refer to and include the ... branches, departments or agencies of the state, or any... other unit or institution, deriving its authority and powers from the sovereignty of the state.
La.R.S. 41:1212:
Lands which may be leased; purposes; ...
A. Any lessor may, through its governing authority, lease for trapping, grazing, hunting, agricultural, and any other legitimate purposes, including, ... removal from the land of subterranean water, or other such substances, other than for oil, gas, or other mineral purposes and development, any lands of which the lessor has title, custody, or possession, ... in accordance with such terms and conditions as the governing authority deems to be to the best interest of the lessor.
* * * * * *
La.C.C. art. 490:
Art. 490. Accession above and below the surface
Unless otherwise provided by law, the ownership of a tract of land carries with it the ownership of everything that is directly above or under it.
The owner may make works on, above, or below the land as he pleases, and draw all the advantages that accrue from them, unless he is restrained by law or by rights of others.
[6] (2) Article VI, § 44 defines "Political subdivision" to include a parish, a municipality, "and any other unit of local government, including a... special district, authorized by law....")
[7] Art. VI, Section 17 (enabling "local governmental subdivisions" to do so), 44(1) ("`Local governmental subdivision' means any parish of municipality.")
[8] The Constitution does not grant the Commission any plenary authority. To the contrary, article VI of the Louisiana Constitution of 1974, on the subject of Local Government, contains the following limitations:

Sec. 19. Special Districts; Creation
Section 19. Subject to and not inconsistent with this constitution, the legislature by general law or by local or special law may create or authorize the creation of special districts, boards, agencies, commissions, and authorities of every type, define their powers....
(Emphasis ours)
[9] Moreover, we observe that even if the Commission was a home rule charter subdivision such as the City of New Orleans it would appear that, in this instance, the ordinance is too broad to stand, particularly when read in connection with other laws on the same subject matter. Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980), citing Melancon v. Mizell, 216 La. 711, 44 So.2d 826 (1950). The Commission's limited authority under La.R.S. 34:1603 to regulate commerce and traffic, while perhaps broad enough to minimally restrict maritime commercial activities to minimize risks of loss of life and property, is not so plenary as to permit an ordinance of that body to trample upon state laws permitting activities that risk neither.
[10] Regardless of any question that may linger as to whether some sort of grant of authority is required to enable a parish power to zone or regulate local land use, Compare American Waste v. St. Martin Parish Police Jury, 609 So.2d 201 (La.1992) and dissenting opinions, it is clear that a non-home rule charter political subdivision such as the Commission cannot regulate land use without express constitutional or legislative permission. Rollins, 371 So.2d at 1131.