Dear Mr. Moresi:
This office is in receipt of your opinion request regarding the Vermilion Parish Police Jury Ordinance #2005-0-21 (the ordinance) and its subsequent amendments. Your opinion request presented the following questions:
 1. Whether the Police Jury may legally require a shooting range to obtain a permit, as required by the ordinance, in order to operate in the parish even if the shooting range was in operation prior to the adoption of the ordinance?
 2. Whether the Police Jury may enforce Section 5 of the ordinance, which regulates the hours of operation of shooting ranges?
 3. Whether changing from a private shooting range to one that sells memberships and is open to the public constitutes a "substantial change" in the use of the range so as to permit Police Jury regulation?
This office's opinion is that the answers to questions one and two are yes if the ordinance is amended by the removal of the words "excess sound" and "excessive sounds" from Section 1 of the ordinance. This wording in the ordinance gives one the impression the ordinance is a noise control ordinance rather a public safety ordinance. Under La.R.S. 33:2055.1 and La. Atty. Gen. Op. 06-0141, the ordinance with its current wording is unenforceable against persons operating shooting ranges in operation prior to the adoption of the *Page 2 
ordinance on July 5, 2005. It is the opinion of this office that upon making this amendment of the ordinance from a noise control ordinance to a public safety ordinance, the Vermilion Parish Police Jury may enforce all sections of the ordinance and apply it to all shooting ranges in the unincorporated areas of Vermilion Parish including those in operation prior to July 5, 2005. It is this office's opinion that considering shooting ranges have had since July 5, 2005, to become compliant with the ordinance, it is not unreasonable or onerous for Vermilion Parish Police Jury to enforce the ordinance.
Questions one and two are both dependent upon the same legal analysis: (1) the constitutional and/or legislative authority to regulate a shooting range, and (2) the Control Co. v. St. Martin Parish PoliceJury, 609 So.2d 201, (La. 1992); Atty. Gen. Op. No. 98-99. Thus, they will be addressed together in the subsequent paragraphs.
Vermilion Parish is a non-home rule charter political subdivision governed by the police jury system. The Louisiana Supreme Court has consistently interpreted Article VI, Section 7(A) of the Louisiana Constitution to indicate that when a police jury has not adopted a home rule charter or been empowered by vote of the electorate to exercise all powers not denied by statute or the constitution, it remains "a creature and subordinate political subdivision of the State and as such only possesses those powers conferred by the State's Constitution and statutes." American Waste, 609 So.2d at 203 (La. 1992). In other words, this means that absent voter approval, a non-home rule charter political subdivision, such as Vermilion Parish, can exercise only those powers expressly granted by the constitution or by the legislature. Id.
Article VI, Section 17 of the Louisiana Constitution authorizes local governmental subdivisions to adopt regulations and standards for land use, provided that this authority is congruent with uniform procedures and is exercised for a public purpose.
Further, Title 33, Section 120 of the Louisiana Revised Statutes delegates to the governing authorities of the parishes of Louisiana the authority "to zone in order to prohibit, restrict, or regulate hunting and the shooting of firearms in the heavily populated areas, as determined by said governing authorities, within their parishes, and to set penalties for violation thereof." LSA-R.S. 33:120. What constitutes "heavily populated areas" is a question of fact to be answered by the vested discretion of the Vermilion Parish Police Jury. See La. Atty. Gen. Op. No. 74-1778
Therefore, the Vermilion Parish Police Jury has the authority to regulate the shooting ranges within its parish through the zoning powers granting by the *Page 3 
constitution and statutes mentioned above. However, the issuance of the permits regulating the shooting ranges and/or the hours of operation thereof must follow uniform procedures, as well as, be employed for a public purpose. In the opinion of this office, Section 4(e) of the ordinance titled "Permits Required" adopted on July 5, 2006, appears to follow uniform procedures and is enforceable against all operators of shooting ranges including those in operation prior to July 5, 2005. It states the following permit requirements:
 (e) The owner(s)/operator(s) of shooting ranges shall file for permits on an annual basis, including those shooting ranges in existence at the time of the adoption of this Ordinance or any amendment thereto. The permit shall include the following:
 (1) The name, address, and phone numbers of the owner(s) and operator(s) of said shooting range.
 (2) Specific location of the shooting range.
 (3) Evidence of general liability insurance coverage with minimum limits of $1,000,000.00 per occurrence.
 (4) Evidence that the shooting range continues to be opened in compliance with the National Rifle Association of America, or its successor.
In the opinion of this office, these permit requirements do not appear to be noise regulations. Therefore, Vermilion Parish Police Jury may require all shooting ranges to have these permit requirements.
Louisiana Revised Statute 33:4780.40 authorizes Vermilion Parish Police Jury to regulate subject to judicial review. LSA-R.S. 33:4780.40
states:
 For the purpose of promoting the health, safety, morals, or general welfare of the community, the governing authorities of parishes, other than the parishes of Rapides, Jefferson, Sabine, and Webster, or their duly created boards of adjustment are hereby authorized to regulate and restrict the [. . .] location and use of the buildings, structures, and land for trade, industry, residence, or other purposes. However, the zoning ordinances enacted by said governing authority and the acts of its zoning commission, board of adjustment, or zoning administrator shall be subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of police powers, excessive use of the power herein granted, or the denial of the right of due process."
Furthermore, any determination as to whether public safety is a sufficient justification should be based on the specific facts and made on a case-by-case *Page 4 
basis by the Vermilion Parish Police Jury. Unfortunately, this office is not a fact finding authority and, therefore, cannot make this determination. However, it is the opinion of this office that the Vermilion Parish Police Jury has the power to review the pertinent facts surrounding each permit applicant and make such a determination. This opinion is based upon La.Atty.Gen.Op. No. 98-99 which answered the question of whether Assumption Parish Police Jury could close or relocate an existing firing range presently located in a residential neighborhood within the parish. That opinion stated the following:
 "Assumption Parish Police Jury is not prohibited by state or federal law from adopting an ordinance regulating the location, relocation, and closure of firing ranges within the parish. However, a case-by case determination of the facts must be exercised in order to find whether a public purpose exists for this action. [. . .] Unfortunately, this office is not a fact-finding authority and, therefore, cannot make this determination. The Police Jury has the power to [. . .] make such a determination."
Regarding the third question, it is the opinion of this office that changing a private shooting range to one that sells memberships and opening up to the public would not constitute a "substantial change in use" as defined by Louisiana Revised Statute 30:2053, which requires a change in the facility's primary use. See LSAR.S. 30:2053. Based on the information provided, the primary use of the range remains for the purpose of shooting firearms.
If you have any further questions regarding this matter, please do not hesitate to contact this office.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 By:
 STANTON HARDEE, III
 ASSISTANT ATTORNEY GENERAL