Dear Chief McKinney:
Your request for an Attorney General opinion was forwarded to me for research and reply. Your questions as I understand them are:
(1) Once, the budget has been approved, can the mayor or town clerk deny your request for a purchase order for the replacement of an expendable item vital to the day to day communications of the police department;
(2) Whether the mayor or clerk can mandate where purchases are made if they fall below the bid law threshold; and
(3) Whether the mayor or alderman has authority to assign the duties of the chief of police to the assistant police chief verbally or by ordinance?
As you have noted in your opinion request, numerous opinions from this office regarding the inherent powers and duties of the chief of police have been addressed. For the sake of not repeating ourselves we encloseLa. Atty. Gen. Op. No. 93-666 as well as La. Atty. Gen. Op.No. 05-0096 recently written addressing the same issues.
As it relates to the authority of the mayor or alderman to assign duties of the chief of police to the assistant chief of police, when it is assumed that he is unable to perform his duties, we have enclosedLa. Atty. Gen. Op. No. 94-188 wherein we opined that no one else is statutorily authorized to exercise the powers granted an elected chief of police unless a vacancy has occurred as defined by LSA-R.S.18:581 and the individual has assumed office pursuant to law.
LSA-R.S. 18:581(3) defines a vacancy as follow:
 (3) "Vacancy" occurs in an elective office when the office is or will be unoccupied by reason of the death of the official who was elected to the office, or by reason of his retirement or resignation, removal from office by any means, failure to take office for any reason, or when it becomes certain that the person elected to the office will not take the office on the day when the term for which he was elected commences, or when the person elected to or holding the office no longer meets the residence or domicile requirements of that office, any declaration of retention of domicile to the contrary notwithstanding, or when an office is created due to a reclassification of a municipality.
Since there is no apparent vacancy as defined in 18:581, the mayor and alderman are without authority to assign the duties of chief of police to the assistant police chief. However, we have noted in, La. Atty. Gen.Op. No. 00-51 that one method of dealing with a chief whose manner of conducting the duties of his office unsatisfactory to the public is to have qualified electors petition for a recall election. (See, State v.Platt, 193 La. 928 (La. 1939). Additionally, the chief of police as an elected official is not subject to the disciplinary actions of the Mayor and/or Board of Alderman. (See, La. Atty. Gen. Op. Nos. 00-51and99-27).
We hope that this opinion sufficiently addresses your concerns. For further assistance please feel free to contact us.
 Sincerely,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By:__________________________ CHARLENE PATTERSON Assistant Attorney General
 CCF, Jr./CP
 OPINION NO. 05-0096 December 8, 2005 107 — SHERIFFS — Constables Marshals, including Ex-Ofticio Tax Collectors, rights, powers duties, in general
 La. Const. Art. 6, § 7
La. R.S. 14:134 La. R.S. 32:398.1 (B) La. R.S. 33:404.1 La. R.S. 33:422 La. R.S. 33:423 La. R.S. 33:425 La. R.S. 33:4712 La. R.S. 33:4712(B) La. R.S. 39:1305 La. R.S. 39:1305C(2). La. R.S. 44:1A(3J La. R.S. 44:3(2) La. R.S. 44:31 B(1) La. R.S. 44:33 La. R.S. 44:35 La. R.S. 44:37 La. R.S.44.4.1 C.Cr. Pro. art. 202 C.Cr. Pro. art. 202 C.Cr. Pro art. 203
 Hon. McKindley Hoover, Jr. Chief of Police Natchez Police Department Post Office Box 229 181 Main Street Natchez, Louisiana 71456 Dear Chief Hoover:
I am in receipt of your request for an Attorney General's opinion. Your letter poses questions concerning the relative powers and duties among an elected chief of police, mayor and board of aldermen in a Lawrason Act municipality.
Your first question deals with an elected police chief's right to make purchases for his department. More specifically, you ask that once the mayor and board of alderman have agreed on a budget, does the mayor have to be consulted for the chief of police to make a purchase of equipment § The answer to your inquiry is well-stated in Attorney General Opinion No. 98-469:
 An elected chief of police has, pursuant to R.S. 33:423, [FN1] the inherent power and authority to supervise and control his office, equipment and personnel on a day-to-day basis. In Doyle v. City of Harahan, 610 So. 2d 272 (La.App. 5th Cir. 1992), the court concluded: We hold that once the mayor and alderman have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police. Doyle, supra, at p. 273.
 Also of importance is the Court's ruling in Cogswell v. Town of Logansport, 321 So. 2d 774
(La.App. 2d Cir. 1975), wherein the court held that the chief of police has the "power to supervise the operation of the police department and assign its personnel and equipment . . ." Cogswell at p. 779. In reliance on the above cited cases, this office has previously concluded that the chief of police is in the best position to determine whether or not his department needs items as diverse as police cars or roof repairs, radio equipment or parking lots. See Attorney General Opinion Nos. 97-203, 96-135, 95-135 and 94-538.
 However, a chief's inherent authority is limited in its application by operation of certain statutory authorities granted the mayor and board of aldermen. For example, a chief is subject to the requirement that the expenditure of police department funds be made only pursuant to, and in accordance with, specific appropriations from a budget approved by the governing authority. See R.S. 33:425 [FN2] and Attorney General Opinion Nos. 97-203, 95-275, 95-135 and 94-538. A chief of police is subject to a municipality's regulations for the use of purchase orders. See R.S. 33:425 [FN3] and Attorney General Opinion No. 93-75.
Based on the cited cases and Attorney General Opinions, the mayor does not need to be consulted. Assuming that the chief of police made the expenditure pursuant to and in conformity with specific appropriations approved by the governing authority, it is the opinion of this office that the chief of police has operational control over the expenditures of his department and therefore does not need further approval from either the mayor or the board of alderman before he makes the purchase of police equipment.
You ask a related question concerning the police chief's recourse if the mayor refuses to act. The only authority that speaks to this issue is Attorney General Opinion No. 98-469 which reads as follows:
 Your questions also prompt us to define the recourse available to the chief in the event he makes a purchase within budget guidelines, but payment for same is refused. As previously stated, our courts have recognized that the chief has the inherent authority to control police department funds on a day-to-day basis. It remains the opinion of this office that the refusal to pay an expenditure validly incurred by the chief constitutes an infringement upon these inherent powers, absent the failure of the chief to comply with formal municipal purchasing procedures in making the purchase. See Attorney General Opinion No. 93-75.
The mayor's infringement upon the chiefs inherent authority to control the police department could in this office's opinion subject him, the mayor, to a suit for mandamus. Even worse the mayor, as a public figure, could be subjected in relation to the intentional nonperformance of his lawful duties to such laws as the statute relating to malfeasance in office. La. R.S. 14:134. Therefore, once the mayor and board of alderman have agreed on a budget, the police chief has the operational control over the department expenditures in accordance with, specific appropriations from a budget which was approved by the governing authority.
Your second question involves the prohibition against setting up a separate account for a police department. General speaking, a police chief cannot set up a separate account for a police department. Attorney General Opinion No. 98-469 dealt with setting up a fund and depositing fines from traffic tickets to fund it. In Attorney General Opinion No. 98-469, we opined that:
 [y]ou may not set up a separate account in which to deposit ticket monies. The fines collected from tickets issued by police should be deposited into the city treasury in accordance with R.S. 33:422 [FN4], and as stated in Opinion 95-118, the deposit is with "no specific designation for exclusive use of the funds for law enforcement purposes." It was observed that in the absence of a local ordinance, "expenditure of fines levied from police tickets remain at the discretion of the local mayor or town council." It was then concluded, "Thus, it is the opinion of this office that a local government is not required under state law to release funds generated by ticket fines to the chief of police to use exclusively for law enforcement purposes." The operating funds of the police department are not proportional to the fines collected, but instead are budgeted by ordinance as the governing authority decides.
Thus, based on the foregoing authority, we believe that, absent some local ordinance, the establishment of any separate account presumably to be designated for the use of law enforcement purposes is prohibited.
Your third issue concerns a mayor's authority to change an arrest warrant after it has been issued. As a general rule, a mayor acting as a magistrate has no authority to modify the form or change the contents of an arrest warrant. However, a mayor is authorized to recall a warrant by previous incumbents provided it is not a capital offense or necessarily punishable at hard labor. Attorney General Opinion No. 92-709.
A mayor may act as a magistrate, La. R.S. 33:41. C.Cr.Pro. Art. 202 A. expressly states that "[a] warrant of arrest may be issued by any magistrate. . . ." However, the form and contents of a warrant as described in C.Cr.Pro. Art. 203 are very specific and leave little room for discretion. Art. 203 reads as follows:
The warrant of arrest shall:
 (1) Be in writing and be in the name of the State of Louisiana;
 (2) State the date when issued and the municipality or parish where issued;
 (3) State the name of the person to be arrested, or if his name is unknown, designate the person by any name or description by which he can be identified with reasonable certainty;
 (4) State the offense charged against the person to be arrested;
 (5) Command that the person against whom the complaint was made be arrested and booked; and
 (6) Be signed by the magistrate with the title of his office.
The warrant of arrest may specify the amount of bail in noncapital cases when the magistrate has authority to fix bail.
No where in the statute is the mayor allowed to modify or alter warrants injudiciously. The statute defining their form and content is tightly woven, and it leaves little doubt that legislators wanted to grant mayors or anyone else little leeway in using warrants. It is the position of this office that a warrant may not be recalled if it states the name of the person to be arrested. A justice of the peace may recall warrants issued by previous incumbents, provided it is not a capital offense or necessarily punishable at hard labor. Attorney General Opinion No. 92-709. Therefore, a mayor acting as a magistrate has no authority to modify the form or change the contents of an arrest warrant, except to recall those issued by previous incumbents on noncapital offenses, or offenses punishable at hard labor.
Your fourth question involves whether a governing authority may enact a municipal ordinance allocating to the police department's budget a percentage of fines or court costs, or both, imposed by the mayor's court. This office has long held that absent an ordinance to the contrary, fines and court costs imposed by the mayor's court shall be paid into the town's treasury. However, it follows that municipalities that do enact ordinances designating that fines and court costs or portions thereof shall be deposited or allocated to other municipal treasuries for other municipal purposes including law enforcement. Attorney General Opinion No. 87-255.
The answer to your fifth question is codified in La. R.S. 33:4712. This statute provides, in pertinent part, that police equipment may be sold by the municipality as long as the municipality follows the statutory guidelines set forth in La. R.S. 33:4712(B). The statute further provides that the proceeds from the sale must be put into the treasury of the governing authority. Without specific statutory authorization, the deposit is with no specific designation for exclusive use of the funds for law enforcement purposes. Attorney General Opinion No. 98-469.
For the purposes of clarity, we now take question number 14 out of order, for reasons that will become clear later, and address it at this time. Your question number 14 deals with budgetary matters, in general, and the mayor's failure to list the police department as a line item in the budget, in particular.
The Louisiana Government Budget Act requires Natchez to prepare a budget showing the amount of funds allocated for police purposes during a fiscal year. La. R.S. 39:1305. In that this budget is the document which authorizes expenditures from budgeted municipal funds, the expenditures and proposed appropriations for the police department should be indicate and designated as a line item in the municipal budget. Attorney General Opinion No. 87-682.
The Court in Doyle v. City of Harahan, 610 So.2d 272 (La.App. 5th Cir. 1992) decided questions 6 and the first part of 9 raised by you. InDoyle, the Court held that once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police. Thus, under the Doyle decision, when the mayor and board of aldermen settle on a final budget, the mayor does not have the authority to control the police department's expenditures. As long as there is a specific grant of authority in the budget, you would be eligible to attend the Chief's conference. La. R.S. 39:1305 C. (2). Similarly, you could purchase software for your Department as long as the expenditures of police funds were made only pursuant to, and in accordance with specific appropriations from a budget approved by the governing authority.
Question 6, like question 12, involves a similar principle of law. Question 12 deals with the mayor's power to assume the cost of a wrecker bill, at Village expense, on a vehicle stored by the Police Department. The duties of the mayor are described in La. R.S. 33:404 (A) (9). It reads as follows:
 A. The mayor has any of following powers, duties, and responsibilities:
 (9) To have any other power or perform any other duty as may be necessary or proper for the administration of municipal affairs not denied by law.
Therefore, unless prohibited by state statute, local ordinance, or the Louisiana Constitution, and as long it is in accordance with specific appropriation from a budget approved by the governing authority, the mayor has the authority to assume the cost of a wrecker bill for a car stored by the police department. La. R.S. 32:398.1(B) answers the second part to question 9 pertaining to the mayor's refusal to share ticket information with your office. The law on traffic citations is set forth in La. R.S. 32:398.1(A) and (B):
 A. All traffic enforcement agencies in this state shall provide traffic citations in appropriate form containing notices to appear, which shall be issued in books with citations in quadruplicate and meeting the requirements of this part and approved by the commissioner.
 B. The chief administrative officer of each traffic-enforcement agency shall issue these books, maintain a record of each book and each citation contained therein issued to all individual members of the traffic enforcement agency and shall require and retain a receipt for each book issued.
La. R.S. 32:398.1(B) provides that the chief of police in his capacity as the chief administrative officer of his traffic enforcement agency shall in essence serve as custodian of the traffic citation books. Thus, this office believes that the chief has the right to obtain the traffic and warrant information currently locked in the offices of the secretary and mayor.
The Louisiana Constitution, state statutes, and case law provide the answers to your questions number 10 and 11. Article 6, Section 7 of the Louisiana Constitution reads as follows:
 a local governmental subdivision which has no home rule charter or plan of government may exercise any power and perform any function necessary, requisite, or proper for the management of its affairs, not denied by its charter or by general law, if a majority of the electors for that purpose vote in favor of the proposition that the governing authority may exercise such general powers. Otherwise, the local governmental subdivision shall have the powers authorized by this constitution or by law.
Where the municipality has the authority to regulate by ordinance in a particular field, the exercise of that authority is dependent upon whether the State Legislature has not enacted general laws on the same subject and thereby preempted the field of regulation. RollinsEnvironmental Services of Louisiana v. Iberville Parish PoliceJury, 371 So.2d 1127 (La. 1979).
La. R.S. 33:404.1 grants the board of aldermen the authority to pay a salaried employee. This statute provides that:
 [t]he board of aldermen shall by ordinance fix the compensation of the mayor, aldermen, clerk, chief of police, and all other municipal officers. The board of aldermen may by ordinance increase or decrease their compensation and the compensation of an non-elected municipal officer and may increase the compensation of other elected officials. However the board of aldermen shall not reduce the compensation of any elected official during the term for which he is elected.
The power to set the manner and timing of payment derives from the board of aldermen's inherent power to fix the compensation of those listed in La. R.S. 33:404. Therefore, unless prohibited by ordinance or other state statute, the board of aldermen have the authority to pay salary and vacation pay by separate checks and to postpone paying you until the Thursday of each month when the Council meets.
In question 13, you ask at what point is a traffic citation no longer part of a Police Record. This question is addressed in La. R.S. 32:398.2
as follows:
 B. Upon the deposit of the original citation or a copy of the traffic citation with a court having jurisdiction over the alleged offense or with the traffic violations bureau as set forth herein, the original citation or copy of such traffic citation shall be disposed of only by trial in the court of proper jurisdiction or any other official action by a judge of the court, including forfeiture of the bail, or by the deposit of sufficient bail with the traffic violations bureau or payment of a fine to said bureau by the person to whom such traffic citation has been issued. However, a citation or its copy alleging a violation of R.S. 32:80 (A) shall be disposed of only by trial or acceptance of a plea in open court. [Emphasis added.]
 C. It shall be unlawful for any traffic enforcement officer or any other officer or public employee to dispose of a traffic citation or copies thereof or of the record of the issuance of the citation in a manner other than as required herein.
Under this statute, a traffic citation can only be disposed of by trial or acceptance of a plea in open court. Any disposal of a traffic citation prior to trial or acceptance of a plea in open court is unlawful. Therefore, a traffic citation will remain a part of the Police Record until it is disposed of by trial or acceptance of a plea in open court.
The response to your fifteenth question was addressed above in answer to question 1. The answer to that question relied heavily on Attorney General Opinion No. 98-469. That Opinion stated that under La. R.S.33:423, an elected chief of police has the inherent power and authority to supervise and control his office equipment and personnel on a day-to-day basis. Once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocatethe expenditure of those funds rests with the elected chief ofpolice. Doyle v. City of Harahan, 610 So.2d 272, 273 (La.App. 5th Cir. 1992). [Emphasis added.] The police chief only has operational control over the expenditures of the department within the line item perimeters of the appropriation within the municipality's budget.
In reliance upon the above cases and statutes, the police chief is in the best position to determine the department's needs. The chief, however, is subject to the municipality's regulations for the use of purchase orders. See La. R.S. 33:425 and Attorney General Opinion No. 93-74. It is the opinion of this office that the refusal to pay an expenditure validly incurred by the chief constitutes an infringement upon his inherent powers absent the failure of the chief to comply with formal municipal purchasing procedures in making the purchase. See Attorney General Opinion No. 93-75. The authority to control police department funds on a day-to-day basis can only be utilized if it is done in compliance with the use of purchase orders according to municipal regulations. Therefore, based upon the reasoning contained in Attorney General Opinion No. 93-75, a mayor's refusal to provide you with a purchase order book would constitute an infringement upon your inherent authority to control your office's funds once the mayor has budgeted and the aldermen have appropriated by ordinance the monies to be dedicated for use by the police department.
Your seventh question complains about the mayor's refusal to divulge financial statements during monthly meetings of the Council. Your complaint invokes the provisions of the Public Records Law. La. R.S.44:4.1 states, in pertinent part:
 A. The legislature recognizes that it is essential to the operation of a democratic government that the people be made aware of all exceptions, exemptions, and limitations to the laws pertaining to public records. In order to foster the people's awareness, the legislature declares that all exceptions, exemptions, and limitations to the laws pertaining to public records shall be provided for in this Chapter or the Constitution of Louisiana. Any exception, exemption, and limitation to the laws pertaining to public records not provided for in this Chapter or in the Constitution of Louisiana shall have no effect. [Emphasis added.]
The financial statements of a municipality are not listed as one of the exceptions exemptions, or limitations listed in section B of this statute. Nor are they listed as an exception, exemption or limitation in the Constitution of Louisiana or any other statute. Therefore, financial statements of a municipality are public records that are subject to disclosure.
La. R.S. 44:31B(1) states that "[e]xcept as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of the Chapter any person of the age of majority may inspect, copy or reproduce, or obtain a reproduction of any public record." This right cannot be extinguished unless the custodian determines the documents are confidential in nature. La. R.S. 44:3(2) provides: "The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian." La. R.S. 44:1 A (3) defines a custodian as "the public official or head of any public body having custody or control of a public record, or a representative specifically authorized by him to respond to requests to inspect any such public records."
Once a request is made for a public record, La. R.S. 44:33 mandates the official, who has responsibility for the record, to have the record segregated from other records under his custody. The purpose of segregating the requested record is to permit the public to reasonably view the record. If a person is denied the right to inspect or copy the record, La. R.S. 44:35 allows that person to institute proceedings for the issuance of a writ of mandamus and injunctive or declaratory relief, together with attorney's fees, costs and damages in the district court for the parish in which the office of the custodian is located. Furthermore, failure to comply with the public records law can result in criminal penalties as well. La. R.S. 44:37 provides as follows:
 Any person having custody or control of a public record, who violates any of the provisions of this Chapter, or any person not having such custody or control who by any conspiracy, understanding or co-operation with any other person hinders or attempts to hinder the inspection of any public records declared by this Chapter to be subject to inspection, shall upon first conviction be fined not less than one hundred dollars, and not more than one thousand dollars, or shall be imprisoned for not less than one month, nor more than six months. Upon any subsequent conviction he shall be fined not less than two hundred fifty dollars, and not more than two thousand dollars, or imprisoned for not less than two months, nor more than six months, or both.
In question number 8, you ask whether monies from an account set up for law enforcement can be used for other purposes. As stated above, under La. R.S. 33:423, an elected chief of police has the inherent power and authority to supervise and control his office equipment and personnel on a day-to-day basis. Once the mayor and aldermen have budgeted and appropriated money for the police department, the authorityto allocate the expenditure of those funds rests with the elected chiefof police. Doyle v. City of Harahan, 610 So.2d 272, 273 (La.App. 5th Cir. 1992). [Emphasis added.] The police chief only has operational control over the expenditures of the department within the line item perimeters of the appropriation within the municipality's budget.
According to Attorney General Opinion No. 98-469, a separate account may not be set up in favor of the police department in absence of a local ordinance. Expenditure of monies in absence of a local ordinance remains at the discretion of the local mayor or town council. Based on the cited authority, the control of the account in question is dependent upon certain factors. If by ordinance the mayor has in fact created an account for police department expenditures, then once those funds are put into that account, the police chief has the operational control over the department expenditures. However, in the absence of an ordinance that creates an account for the police department, the mayor retains control of those monies.
We hope that this sufficiently answers your inquiry, but if we can be of further assistance, please do not hesitate to contact us.
 Very truly yours
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: ____________________ Christopher D. Matchett Assistant Attorney General
 CCF:Jr.:CDM:lrs
 OPINION NUMBER 93-666 November 9, 1998
71 MUNICIPALITIES 77 OFFICERS R.S. 33:404. 33:423. 33:423.2. 33:423.7l 39:1301. 39:1302. 39:1309. 33:1310. 42:4.1
 Answers numerous questions concerning the authority of a Chief of Police vis-a-vis the Mayor in a Lawrason Act municipality. Questions deal with the expenditure of funds budgeted and appropriated to the police department and the budgetary pcocess, in general.
 Honorable Lum Farr Chief of Police Marion Police Department P. O. Box 294 Marion, LA 71260 RICHARD P. IEYOUB ATTORNEY GENERAL
Dear Chief Farr:
You have requested an opinion of the Attorney General regarding the powers and duties of an elected Chief of Police (Chief) vis-a-vis the Mayor in the Town of Marion, a Lawrason Act municipality. You pose several questions pertaining to the town's budgetary practices and the day-to-day operations of the police department. You first ask whether the Chief has the day-to-day operational controls to administer the department's budget, once the budget ordinance has been adopted and funds are appropriated.
The law applicable to this issue is found at LSA-R.S. 33:404 which grants the mayor the following authority:
 "(1) To supervise and direct the administration and operation of all municipal departments, offices and agencies, other than a police department with an elected chief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law
 . . .
 * * * (4) To prepare and submit an annual operations budget and a capital improvement budget for the municipality to the board of aldermen in accordance with the provisions of R.S. 39:1301, et seq. and any other supplementary laws and ordinances.
 * * * (8) To sign warrants drawn on the treasury for money. . . .
 (9) To have any other power or perform any other duty as may be necessary or proper for the administration of municipal affairs not denied by law.
 B. The provisions of this Section shall not be construed to alter, affect, or amend any powers, duties, and functions of any elected chief of police as set forth in R.S. 33:423, R.S. 33:423.2
and R.S. 33:423.3." (Emphasis added.)
As can be seen from the above, the Mayor has the power to supervise and direct the administration and operation of all municipal departmentsexcept a police department with an elected chief of police. Thus, your police department is not subject to the supervision and control of the Mayor. You, as an elected chief of police, have supervision and control of the police department, including its property and personnel.
This office has consistently opined that the Chief's (or marshall's) authority under LSA-R.S. 33:423 to enforce all ordinances includes the granting of certain inherent powers which are necessary for him to effectively carry out his duties. In the case of Cogswell v. Town ofLogansport, 321 So.2d 774 (La.App. 2nd Cir. 1974), the Court held that the general responsibility for law enforcement granted to a chief of police entails the power to supervise the operation of the department and assign its personnel and equipment, subject to the statutory authority exercisable by the mayor and board of aldermen. See alsoLintini v. City of Kenner, 211 So.2d 311 (La. 1968) and Attorney General Opinion No. 86-589.
Attorney General Opinion No. 86-589, in addressing this issue, held:
 "Thus, the mayor does not have the authority to control the expenditures of the police department. The chief of police has the inherent authority to control or administer the day to day operations of the police department. This inherent authority includes the authority to control and administer police department property and personnel, which includes police department funds. This inherent authority to control those funds is subject, however, to the requirement that the expenditure of those funds only be made pursuant to or in accordance with specific appropriation authorized by a municipal ordinance enacted by the board of aldermen." (Emphasis added.)
See also Attorney General Opinion Nos. 82-1004 and 93-405.
The above opinion was cited favorably in the case of John Doyle, Jr.,Chief of Police for the City of Harahan v. City of Harahan and theHonorable Carlo R. Ferrara, Mayor of the City of Harahan, Number 92-CA-587, Fifth Circuit Court of Appeal, State of Louisiana. The Court held:
 "We hold that once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police. This is consistent with the Second Circuit's ruling, on other facts, in Cogswell v. Town of Logansport, 321 So.2d 774, 779 (La.App. 1975), that the chief of police has `the power to supervise the operation of the police department and assign its personnel and equipment. . . .' He is in the best position to determine whether or not his department needs police cars or roof repairs, radio equipment or parking lots. We affirm the judgment in favor of John Doyle, Jr., Harahan's chief of police, and against the City of Harahan and its mayor, Carlo R. Ferrara."
In summary, and in answer to your first question, the Chief has the inherent authority to control police department funds on a day-to-day operational basis. This authority is subject to said funds being budgeted and appropriated pursuant to municipal ordinance.
Your second question, relative to the authority of the Chief to have operational control over the expenditures of his department, within the line item perimeters of his budget, was also addressed in theDoyle case, cited supra, and by Attorney General Opinion Nos. 83-257 and 86-589. As previously noted, once funds are budgeted and appropriated, the Chief has operational control over the expenditures for his department within the perimeter of the appropriation.
Attorney General Opinion No. 83-257 is in accord:
 "It is the opinion of the office that when funds are specifically appropriated by the mayor and the board of Aldermen to the police department, those funds may be disbursed by the police department at its discretion in order to effectively maintain and control that department's operation.
 Though not specifically enumerated by statute, it is our opinion that the general responsibility of the chief of police does include the authority to spend those funds specifically appropriated to him, where and how it best suits the efficiency of the department for the public."
You next ask if you have the authority to make line item adjustments to the police department budget in order to comply with LSA-R.S. 39:1301, et seq. The statutory provisions referred to comprise the "Louisiana Local Government Budget Act (Budget Act)". Sections 1302, 1309, and 1310 are relevant to this issue, and provide, in pertinent part, the following:
 "§ 1302. Definitions
 For the purpose of this Chapter:
 (1) `Political subdivision' means a parish; municipality; school board; special district created pursuant to and under the authority of Section 16 or 19 of Article VI of the Louisiana Constitution of 1974; registrar of voters; or independently elected parish offices, including the office of assessor, clerk of district court, coroner, district attorney, sheriff, and judges, but only insofar as their judicial expense funds, as provided for in Title 13 of the Louisiana Revised Statutes of 1950.
 (2) `Governing authority' means the body which exercises the legislative functions of the political subdivision."
 "§ 1309. Amending the budget
 When the governing authority has received notification pursuant to R.S. 39:1310, or there has been a change in operations upon which the original adopted budget was developed, the governing authority shall adopt a budget amendment in an open meeting to reflect such change." (Emphasis added.)
 "§ 1310. Budgetary authority and control
 A. The adopted budget and any duly authorized adopted amendments shall form the framework from which the chief executive or administrative officers and members of the governing authority of the political subdivision shall monitor revenues and control expenditures. The chief executive or administrative officer shall advise the governing authority or independently elected official in writing when:
 (1) Total revenue and other sources plus projected revenue and other sources for the remainder of the year, within a fund, are failing to meet total budgeted revenues and other sources by five percent or more.
 (2) Total actual expenditures and other uses plus projected expenditures and other uses for the remainder of the year, within a fund, are exceeding the total budgeted expenditures and other uses by five percent or more.
 (3) Actual beginning fund balance, within a fund, fails to meet estimated beginning fund balance by five percent or more and fund balance is being used to fund current year expenditures.
 B. The written notification as required by this Section as well as any responsive action taken by the governing authority or independently elected official shall be transmitted to and retained by the chief executive or administrative officer.
 C. The adopted budget and any duly authorized amendments required by this Section shall constitute the authority of the chief executive or administrative officers of the political subdivision to incur liabilities and authorize expenditures from the respective budgeted funds during the fiscal year."
This office has previously opined in Attorney General Opinion No. 87-682 that municipalities are required by the Budget Act to prepare and submit a comprehensive budget for the municipality. The opinion concluded:
 "In that this budget is the document which authorizes expenditures from budgeted municipal funds, the expenditures and proposed appropriations for the police department should be indicated and designated as a line item in the municipal budget."
While the Chief should be given the opportunity to submit input for purposes of budget preparation, it is clear from the statutes pertaining to Lawrason Act municipalities, and those comprising the Budget Act, that the authority to adopt and amend the budget is vested exclusively with the Mayor and Board of Aldermen (i.e., Council). Therefore, you, in your capacity as Chief, are not authorized to make line item adjustments within the municipality's budget thereby effecting an amendment thereto.
Your fourth question is whether the Mayor and Council have the authority to decrease or reduce moneys contained in the original police department budget and, if so, under what circumstances. This question has been addressed, in part, in our response to your third question. Thus, in the event a budget amendment is proposed and adopted pursuant to LSA-R.S. 39:1309 and 1310, the Mayor and Council may decrease the funds originally budgeted to your department. This process must be conducted under the provisions of the Open Meeting Law, as required by LSA-R.S. 39:1309 and 42:4.1 et seq.
You next ask what recourse does the Chief have in the event a purchase is made within budget guidelines, but payment for same is refused. It is assumed that the Chief has complied with formal municipal purchasing procedures in making the purchase. See Attorney General Opinion No. 93-75.
As previously stated, our court's have recognized that the Chief has the inherent authority to control police department funds on a day-to-day basis. It is the opinion of the office that the refusal to pay an expenditure validly incurred by the Chief constitutes an infringement upon these inherent powers.
While you may elect to seek payment through the judicial process, we recommend that this be a last recourse, giving way to good faith communications between your department and the administration.
Your next two questions relate to the limits of the Chief's control over his department's vehicles and equipment. As previously stated, the Chief's inherent authority to supervise and control the functions of the police department includes the supervision of his office, office equipment, and office personnel. It also necessarily includes the authority to assign and control the use of police vehicles. See Attorney General Opinion Nos. 86-589, 87-194, 87-489, and 93-405.
Finally, you ask whether the Council can designate funds from the Town's General Fund equal to the amount of monthly court costs, and assign these funds to a specific line item within the police department's budget, designating them for specific purposes. You have no objection to this allocation and, in fact, support it. You also ask if unused portions of these moneys may be deposited and/or invested for future department purchases.
This issue has been previously addressed in Attorney General Opinion No. 92-720. Therein, it was concluded that a municipality may legally transfer moneys representing fines and/or court costs from its treasury into a separate account to be used for expenditures relating to the police department. This account should obviously be maintained in accordance with generally accepted accounting principles. Any questions regarding the applicability of these principles should be directed to the Office of the Legislative Auditor at (504) 339-3800.
Trusting this opinion has adequately addressed your inquiries, I am
 Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ____________________ ROBERT E. HARROUN, III Assistant Attorney General
 RPI/ROB3/bb 0194R
 OPINION NUMBER 94-188 April 18, 1994 77 OFPICERS-Loeal A Municipal C.C.P. Art. 3863; U.S. 33.423; R.S. 33:362(AX3); R.S. 33:1531; R.S. 33:2560
 Mr. John J. Molaison, Jr. Westwego City Attorney 419 Avenue A Westwego, LA 70094 Dear Mr. Molaison:
RICHARD P. IEYOUB ATTORNEY GENERAL
This office is in receipt of your opinion request directed to Attorney General Richard P. Ieyoub. The request has been assigned to me for resolution. We restate your questions as presented:
 (1) May the board of Aldermen in a Lawrason Act municipality commence disciplinary action against a member of the classified service of the police department without the recommendation of the elected chief of police ?
 (2) May a person designated to serve in the absence of the chief of police make such recommendations?
 (3) Does the failure of the chief of police to make recommendations to the mayor and board of aldermen subject him to a possible mandamus action?
Note first that this office has previously concluded that only the board of aldermen has the authority to take disciplinary action against a police officer. An elected chief of police is charged with law enforcement in the municipality, but he can only make recommendations to the mayor and board of aldermen for dismissal of police personnel. The board of aldermen may entertain the recommendation of the chief of police, but the board is not bound by the recommendation. LSA-R.S.33:423 provides, in part:
 . . . . . . . .In those municipalities governed by the provisions of this Part, R.S. 33:321 et seq., which have a chief of police elected by the qualified voters thereof, he shall make recommendations to the mayor and board of aldermen for appointment of police personnel, for the promotion of officers, to effect disciplinary action, and for dismissal of police personnel. . . . .LSA-R.S. 33:423(A).
Further, the board of aldermen is subject to those discharge procedures mandated under civil service law for classified municipal employees. LSA-R.S. 33:362(A)(3) provides:
 Subject to law, including R.S. 33:423.2 and 423.3, and applicable civil service rules and regulations, the board of aldermen shall, by ordinance, provide policies and procedures regulating the employment of municipal employees including the hiring and firing of such employees. (Emphasis added).
Fire and police civil service law is mandated for those municipalities having a population of not less than seven thousand and not more than thirteen thousand, which includes the City of Westwego. LSA-R.S.33:2531. Further, civil service laws allow the board of aldermen, as appointing authority, to "remove any employee from the service or take such disciplinary action as the circumstances warrant" for a variety of reasons listed therein. See LSA-R.S. 33:2560.
We find no conflict between the provisions of LSA-R.S. 33:2560 and LSA-R.S. 33:423; both statutes allocate the authority of disciplinary action and dismissal to the board of aldermen. Although LSA-R.S. 33:423
charges the elected chief of police with the responsibility to make his recommendation concerning dismissal, nothing limits the ability of the board of aldermen to take disciplinary action where the elected chief of police fails to make a recommendation.
The civil service laws make no reference to the recommendation of the chief of police concerning discharge of a civil service employee. Accordingly, in response to your first inquiry, this office is of the opinion that the board of aldermen may commence action against a member of the classified service of the Westwego Police Department without the recommendation or concurrence of the police chief.
In response to your second inquiry, note that LSA-R.S. 33:423 limits the authority to make recommendations to the elected chief of police and no other individual. No one else is statutorily authorized to exercise the powers granted an elected chief of police unless a vacancy has occurred as defined by LSA-R.S. 18:581 and an individual has assumed office pursuant to law. Finally, in response to your third inquiry, we refer your attention to LSA-C.C.P. Art. 3863, which provides, in part:
 A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law . . . (Emphasis added).
Mandamus is an extraordinary remedy, used only sparingly, and then to compel performance of a ministerial duty that is clearly required by law; it does not issue in a doubtful case. See City of Shreveport v.Stanley, 446 So.2d 839 (La.App. 1st Cir. 1980); writ den.,450 So.2d 956 (La. 1980). The use of the word "shall" in LSA-R.S. 33:423
connotes a mandatory obligation on the part of the elected chief of police to submit his recommendation; we are of the opinion that mandamus is a proper remedy to compel the chief of police to perform this statutory duty.
We hope the foregoing is responsive to your inquiries. Should you have further need of assistance, please contact this office.
 Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________ KERRY L. KILPATRICK Assistant Attorney General
 RPI/KLK/94-188
 OPINION NUMBER 93-666 November 9, 1993 71 MUNICIPALITIES 77 OFFICERS
 R.S. 33:404. 33:423. 33:423.2. 33:423.3. 39:1301. 39:1302. 39:1309. 33:1310. 42:4.1 Answers numerous questions concerning the authority of a Chief of Police vis-à-vis the Mayor in a Lawcason Act municipality. Questions deal with the expenditure of funds budgeted and appropriated to the police department and the budgetary Dcocess. in general.
 Honorable Lum Farr Chief of Police Marion Police Department P. O. Box 294 Marion, LA 71260 Dear Chief Farr:
You have requested an opinion of the Attorney General regarding the powers and duties of an elected Chief of Police (Chief) vis-à-vis the Mayor in the Town of Marion, a Lawrason Act municipality. You pose several questions pertaining to the town's budgetary practices and the day-to-day operations of the police department. You first ask whether the Chief has the day-to-day operational controls to administer the department's budget, once the budget ordinance has been adopted and funds are appropriated.
The law applicable to this issue is found at LSA-R.S. 33:404 which grants the mayor the following authority:
 "(1) To supervise and direct the administration and operation of all municipal departments, offices and agencies, other than a police department with an elected chief of police, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law
 . . .
 * * * (4) To prepare and submit an annual operations budget and a capital improvement budget for the municipality to the board of aldermen in accordance with the provisions of R.S. 39:1301, et seq. and any other supplementary laws and ordinances.
 * * * (8) To sign warrants drawn on the treasury for money. . . .
 (9) To have any other power or perform any other duty as may be necessary or proper for the administration of municipal affairs not denied by law.
 B. The provisions of this Section shall not be construed to alter, affect, or amend any powers, duties, and functions of any elected chief of police as set forth in R.S. 33:423, R.S. 33:423.2
and R.S. 33:423.3." (Emphasis added.)
As can be seen from the above, the Mayor has the power to supervise and direct the administration and operation of all municipal departmentsexcept a police department with an elected chief of police. Thus, your police department is not subject to the supervision and control of the Mayor. You, as an elected chief of police, have supervision and control of the police department, including its property and personnel.
This office has consistently opined that the Chief's (or marshall's) authority under LSA-R.S. 33:423 to enforce all ordinances includes the granting of certain inherent powers which are necessary for him to effectively carry out his duties. In the case of Cogswell v. Town ofLogansport, 321 So.2d 774 (La.App. 2nd Cir. 1974), the Court held that the general responsibility for law enforcement granted to a chief of police entails the power to supervise the operation of the department and assign its personnel and equipment, subject to the statutory authority exercisable by the mayor and board of aldermen. See alsoLintini v. City of Kenner, 211 So.2d 311 (La. 1968) and Attorney General Opinion No. 86-589.
Attorney General Opinion No. 86-589, in addressing this issue, held:
 "Thus, the mayor does not have the authority to control the expenditures of the police department. The chief of police has the inherent authority to control or administer the day to day operations of the police department. This inherent authority includes the authority to control and administer police department property and personnel, which includes police department funds. This inherent authority to control those funds is subject, however, to the requirement that the expenditure of those funds only be made pursuant to or in accordance with specific appropriation authorized by a municipal ordinance enacted by the board of aldermen." (Emphasis added.)
See also Attorney General Opinion Nos. 82-1004 and 93-405.
The above opinion was cited favorably in the case of John Doyle, Jr.,Chief of Police for the City of Harahan v. City of Harahan and theHonorable Carlo R. Ferrara, Mayor of the City of Harahan, Number 92-CA-587, Fifth Circuit Court of Appeal, State of Louisiana. The Court held:
 "We hold that once the mayor and aldermen have budgeted and appropriated money for the police department, the authority to allocate the expenditure of these funds rests with the elected chief of police. This is consistent with the Second Circuit's ruling, on other facts, in Cogswell v. Town of Logansport, 321 So.2d 774, 779 (La.App. 1975), that the chief of police has `the power to supervise the operation of the police department and assign its personnel and equipment. . . .' He is in the best position to determine whether or not his department needs police cars or roof repairs, radio equipment or parking lots. We affirm the judgment in favor of John Doyle, Jr., Harahan's chief of police, and against the City of Harahan and its mayor, Carlo R. Ferrara."
In summary, and in answer to your first question, the Chief has the inherent authority to control police department funds on a day-to-day operational basis. This authority is subject to said funds being budgeted and appropriated pursuant to municipal ordinance.
Your second question, relative to the authority of the Chief to have operational control over the expenditures of his department, within the line item perimeters of his budget, was also addressed in theDoyle case, cited supra, and by Attorney General Opinion Nos. 83-257 and 86-589. As previously noted, once funds are budgeted and appropriated, the Chief has operational control over the expenditures for his department within the perimeter of the appropriation.
Attorney General Opinion No. 83-257 is in accord:
 "It is the opinion of the office that when funds are specifically appropriated by the mayor and the board of Aldermen to the police department, those funds may be disbursed by the police department at its discretion in order to effectively maintain and control that department's operation.
 Though not specifically enumerated by statute, it is our opinion that the general responsibility of the chief of police does include the authority to spend those funds specifically appropriated to him, where and how it best suits the efficiency of the department for the public."
You next ask if you have the authority to make line item adjustments to the police department budget in order to comply with LSA-R.S. 39:1301, et seq. The statutory provisions referred to comprise the "Louisiana Local Government Budget Act (Budget Act)". Sections 1302, 1309, and 1310 are relevant to this issue, and provide, in pertinent part, the following:
 § 1302. Definitions
 For the purpose of this Chapter:
 (1) `Political subdivision' means a parish; municipality; school board; special district created pursuant to and under the authority of Section 16 or 19 of Article VI of the Louisiana Constitution of 1974; registrar of voters; or independently elected parish offices, including the office of assessor, clerk of district court, coroner, district attorney, sheriff, and judges, but only insofar as their judicial expense funds, as provided for in Title 13 of the Louisiana Revised Statutes of 1950.
 (2) `Governing authority' means the body which exercises the legislative functions of the political subdivision."
 "§ 1309. Amending the budget
 When the governing authority has received notification pursuant to R.S. 39:1310, or there has been a change in operations upon which the original adopted budget was developed, the governing authority shall adopt a budget amendment in an open meeting to reflect such change." (Emphasis added.)
 "§ 1310. Budgetary authority and control
 A. The adopted budget and any duly authorized adopted amendments shall form the framework from which the chief executive or administrative officers and members of the governing authority of the political subdivision shall monitor revenues and control expenditures. The chief executive or administrative officer shall advise the governing authority or independently elected official in writing when:
 (1) Total revenue and other sources plus projected revenue and other sources for the remainder of the year, within a fund, are failing to meet total budgeted revenues and other sources by five percent or more.
 (2) Total actual expenditures and other uses plus projected expenditures and other uses for the remainder of the year, within a fund, are exceeding the total budgeted expenditures and other uses by five percent or more.
 (3) Actual beginning fund balance, within a fund, fails to meet estimated beginning fund balance by five percent or more and fund balance is being used to fund current year expenditures.
 B. The written notification as required by this Section as well as any responsive action taken by the governing authority or independently elected official shall be transmitted to and retained by the chief executive or administrative officer.
 C. The adopted budget and any duly authorized amendments required by this Section shall constitute the authority of the chief executive or administrative officers of the political subdivision to incur liabilities and authorize expenditures from the respective budgeted funds during the fiscal year."
This office has previously opined in Attorney General Opinion No. 87-682 that municipalities are required by the Budget Act to prepare and submit a comprehensive budget for the municipality. The opinion concluded:
 "In that this budget is the document which authorizes expenditures from budgeted municipal funds, the expenditures and proposed appropriations for the police department should be indicated and designated as a line item in the municipal budget."
While the Chief should be given the opportunity to submit input for purposes of budget preparation, it is clear from the statutes pertaining to Lawrason Act municipalities, and those comprising the Budget Act, that the authority to adopt and amend the budget is vested exclusively with the Mayor and Board of Aldermen (i.e., Council). Therefore, you, in your capacity as Chief, are not authorized to make line item adjustments within the municipality's budget thereby effecting an amendment thereto.
Your fourth question is whether the Mayor and Council have the authority to decrease or reduce moneys contained in the original police department budget and, if so, under what circumstances. This question has been addressed, in part, in our response to your third question. Thus, in the event a budget amendment is proposed and adopted pursuant to LSA-R.S. 39:1309 and 1310, the Mayor and Council may decrease the funds originally budgeted to your department. This process must be conducted under the provisions of the Open Meeting Law, as required by LSA-R.S. 39:1309 and 42:4.1 et seq. You next ask what recourse does the Chief have in the event a purchase is made within budget guidelines, but payment for same is refused. It is assumed that the Chief has complied with formal municipal purchasing procedures in making the purchase. See Attorney General Opinion No. 93-75.
As previously stated, our court's have recognized that the Chief has the inherent authority to control police department funds on a day-to-day basis. It is the opinion of the office that the refusal to pay an expenditure validly incurred by the Chief constitutes an infringement upon these inherent powers.
While you may elect to seek payment through the judicial process, we recommend that this be a last recourse, giving way to good faith communications between your department and the administration.
Your next two questions relate to the limits of the Chief's control over his department's vehicles and equipment. As previously stated, the Chief's inherent authority to supervise and control the functions of the police department includes the supervision of his office, office equipment, and office personnel. It also necessarily includes the authority to assign and control the use of police vehicles. See Attorney General Opinion Nos. 86-589, 87-194, 87-489, and 93-405.
Finally, you ask whether the Council can designate funds from the Town's General Fund equal to the amount of monthly court costs, and assign these funds to a specific line item within the police department's budget, designating them for specific purposes. You have no objection to this allocation and, in fact, support it. You also ask if unused portions of these moneys may be deposited and/or invested for future department purchases.
This issue has been previously addressed in Attorney General Opinion No. 92-720. Therein, it was concluded that a municipality may legally transfer moneys representing fines and/or court costs from its treasury into a separate account to be used for expenditures relating to the police department. This account should obviously be maintained in accordance with generally accepted accounting principles. Any questions regarding the applicability of these principles should be directed to the Office of the Legislative Auditor at (504) 339-3800.
Trusting this opinion has adequately addressed your inquiries, I am
 Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ____________________ ROBERT E. HARROUN III Assistant Attorney General
 RPI/ROB3/bb 0194R
 OPINION NO. 00-57
May 16, 2000 90-A-2 — PUBLIC FUNDS, LOAN, PLEDGE OR La. Const. Art. VII, Sec. 14
 East Ascension Consolidated Gravity Drainage District No. 1 cannot use public funds entrusted to it for drainage purposes for economic development or to provide the community with a multi-purpose event facility.
 Ms. Jessie McCrory LeBlanc Assistant District Attorney 23rd Judicial District 430 South Burnside, Suite A Gonzales, Louisiana 70737
Dear Ms. LeBlanc:
Reference is made to your request for an opinion of this office regarding the legality of East Ascension Consolidated Gravity Drainage District No. 1 (the "District") providing $1,379,000, either in cash, in in-kind support or in drainage improvements to the Lamar Dixon Expo Center (the "Expo Center"), which is to be located in Ascension Parish.
It is our understanding that the Expo Center project began in September of 1997 when Mr. and Mrs. Bill Dixon made a contribution to the Baton Rouge Area Foundation ("BRAF"), a charitable non-profit organization, in order that the BRAF could begin building the Expo Center. The BRAF formed a limited liability corporation, named The Lamar Dixon Expo Center, L.L.C. (the "L.L.C.") to manage the donation from the Dixons.
The purpose of the Expo Center, in accordance with its mission statement, is:
 "To provide the community with a multi-purpose event facility, with an emphasis on equestrian and 4-H activities, to be used as a resource for education and economic development. [The aim of the Expo Center] is to attract diverse entertainment for the community, in a safe and user friendly environment."
In accordance with this mission, the L.L.C., which is currently seeking to be recognized as a 509(a)(2) tax-exempt corporation under the Internal Revenue Code, purchased 236 acres of land in Ascension Parish. 130 of those acres are intended to be utilized for the Expo Center.
Specifically, you are interested in determining whether a $1,379,000 contribution from the District to the Expo Center would constitute a prohibited donation in violation of the Louisiana Constitution.
Your inquiry must be examined in light of La. Const. Art. VII, Sec.14(A), which prohibits the loan, pledge, or donation of the funds or assets of the state or any political subdivision "to or for any person, association, or corporation, public or private."
Art. VII, Sec 14 has been interpreted by the Louisiana Supreme CourtCity of Port Allen v. Louisiana Municipal Risk Agency, 439 So. 2d 399
(La. 1983), which held that this constitutional provision is violated whenever the state or a political subdivision seeks to give up something of value when it is under no legal obligation to do so. In City of PortAllen, supra, the Court stated: ". . . even if political subdivisions cooperate for a public purpose, they still may not give away their assets to other political subdivisions, the United States government or public or private associations or corporations or to individuals merely for a `public purpose'."
This office is unaware of any provision of law which would obligate or authorize utilization of funds entrusted to a drainage district, for drainage purposes, to be expended on economic development or to provide a community with a multi-purpose event facility. Similarly, with regard to an in-kind contribution of drainage improvements by the District to the facility, even though those improvements might indirectly benefit surrounding citizens, it appears that the purpose of such a contribution would not be drainage, but the economic development of the Expo Center. Therefore, in light of the Supreme Court's decision in City of PortAllen, it is the opinion of this office that the District is constitutionally prohibited from making a contribution of $1,379,000 to or for the benefit of the Expo Center project.
Please note that this opinion is not an indication of our disapproval of the District's interest in improving Ascension Parish. On the contrary, this office is supportive of all parochial and municipal improvement and economic development projects. We note, however, that the worthiness of the contemplated use of public funds is immaterial to the constitutionality of a transfer of public funds. See: James v.Rapides Parish Police Jury, 113 So.2d 88 (La.App. 2nd
Cir. 1959), which interpreted a constitutional provision almost identical to the present Article VII, Section 14. We trust the foregoing to be of assistance. Should the District Attorney's Office or East Ascension Consolidated Gravity Drainage District No. 1 need further assistance, please do not hesitate to contact us.
 Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
 RPI:JMZB:jv
 OPINION 98-27 January 29, 1998 78 DUAL OFFICEHOLDING LSA-R.S. 42:63(D)
 The office of police juror is an elective office; the office of deputy sheriff is an appointive office and since the latter is held on a full-time basis, such concurrent holding of positions is violative of LSA-R.S. 42:63(D).
 Honorable Louie Bernard Clerk of Court Tenth Judicial District P. O. Box 476 Natchitoches, LA 71458-0476
Dear Mr. Bernard:
In response to your inquiry of recent date, note that the law prohibits a full-time deputy sheriff from simultaneously holding the office of police juror, as the law provides:
 D. No person holding an elective office in a political subdivision of this state shall at the same time hold another elective office or full-time appointive office in the government of this state or in the government of a political subdivision thereof. No such person shall hold at the same time employment in the government of this state, or in the same political subdivision in which he holds an elective office. In addition no sheriff, assessor, or clerk of court shall hold any office or employment under a parish governing authority or school board, nor shall any member of any parish governing authority or school board hold any office or employment with any sheriff, assessor, or clerk of court. (Emphasis added); see LSA-R.S. 42:63(D).
The office of police juror is an elective office; the office of deputy sheriff is an appointive office and since the latter is held on a full-time basis, such concurrent holding of positions is violative of the statute quoted above.
 Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
 KLK:ams